# THE KEOKUK NORTHERN LINE PACKET COMPANY

*v.*

# ABNER TRUE.

1.  CARRIER—*liability for injury to passenger going off boat.*  Where a passenger on a steamboat, on its stoppage at a point on the river to remain for two hours, in attempting to get to shore on the staging leading from the boat to the shore, was struck by the handle of a loaded box of coal and severely injured, and it appeared that on reaching the lower deck he stopped to see if it was safe to go off on the staging, and saw the servants of the boat going off and coming on the boat bringing coal on board in boxes, those having loaded boxes coming in on the forward staging, and those going off with empty boxes on the after staging, which was placed close by the side of the other, and, perceiving no danger, started to go to the shore on the after staging, following the servants going out with an empty box, and other servants, coming on the forward staging with a loaded box, just before meeting him crossed over to the staging he was on, and, coming at a rapid speed, struck him, inflicting the injury, it was *held* that the company owning and running the boat was liable to him in damages for the injury caused by the negligence of its servants.

2.  SAME—*reasonableness of rule or regulation of steamboat.*  When a steamboat lands at a city, there to remain for two hours, the court say, if the company operating the boat had a rule or regulation requiring a passenger to a more distant point to remain in the cabin, and not go on shore on the staging put out, under penalty of being run over by its servants, they are not prepared to hold the same reasonable or obligatory on the passenger.

3.  SAME—*degree of care required for safety of passenger.*  A steamboat company, as a carrier of passengers for hire, is, through its officers and servants, bound to the utmost practicable care and diligence to carry its passengers safely to their place of destination, and to use all reasonably practicable care and diligence to maintain among the crew of the boat, including deck hands and roustabouts, such a degree of order and discipline as may be requisite for the safety of its passengers.

4.  NEGLIGENCE—*leaving boat and going ashore not negligence or wrongful on part of a passenger.*  Where a steamboat lands at a place to remain there for two hours, and puts out its staging to enable persons to get on and off the boat, it is not reasonable to hold that a passenger should remain on board all the time of the stay, and by attempting to go on shore, observing due prudence and care, he will not be guilty of any wrong or negligence, depriving him of a right of recovery for a personal injury carelessly or recklessly inflicted on him by the employees of the boat.

5. SAME—*degree of care required of the plaintiff.* Where a steamboat lands at a place, and staging is put out to the shore so that persons may pass to and from the boat without danger of injury, provided the boat hands should exercise ordinary care and prudence, there is nothing requiring the exercise of more than ordinary care in a passenger while attempting to go ashore on the staging.

6. WITNESS—*jury to judge his credibility.* The jury are the judges of the credibility of witnesses although there is no evidence impeaching their reputation, and in case of a clear conflict in their evidence, it is for them to determine who told the truth. They may in some cases, as in this, give more credence to the testimony of one witness, than to four testifying differently.

APPEAL from the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

This was an action on the case, brought by Abner True against the Keokuk Northern Line Packet Company. Instructions numbered 4 and 4½, given for the plaintiff, are as follows:

" 4. If the jury believe, from the evidence, that the plaintiff was a passenger on the defendant's boat at the time of the alleged injury, then it was the duty of the defendant, by its officers and employees, to use the utmost practicable care and diligence to carry the plaintiff safely and securely to his destination, and said company was also bound to use all reasonably practicable care and diligence to maintain among the crew of said boat, including deck hands and roustabouts, such a degree of order and discipline as might be requisite for the personal safety and security of the plaintiff and other passengers who might be traveling on said boat; and said company was also bound to have due supervision and control over the crew of said boat by its proper officers."

" 4½. If the jury believe, from the evidence, that the defendant was guilty of negligence as charged in the declaration, then it makes no difference, as to the responsibility of the defendant, whether such negligence appears and is proved by the testimony on the part of the plaintiff, or by the testimony of the defendant's own witnesses."

39—88 ILL.

Mr. WILLIAM W. BERRY, and Mr. JAMES H. DAVIDSON, for the appellant.

Messrs. WHEAT & MARCY, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action brought by Abner True, in the circuit court of Adams county, against The Keokuk Northern Line Packet Company, to recover damages for a personal injury, a fracture of the neck of the left *femur*, caused, as claimed by the plaintiff, from the carelessness of the servants and employees of the company. A trial of the cause before a jury resulted in a verdict in favor of the plaintiff for $3600. The court overruled a motion for a new trial and rendered judgment upon the verdict. The defendant appealed, and in the argument a reversal of the judgment is claimed, on the ground that the evidence does not sustain the verdict, and the court erred in giving certain instructions for the plaintiff and refusing others asked by the defendant. Other questions have been argued, but these are mainly relied upon.

It appears, from the evidence, that on the 25th day of November, 1875, appellee took passage at Canton, a town on the Mississippi river above Quincy, for Falmouth, a town on the river below, on the steamboat Alex. Mitchell, a regular packet, belonging to and run by appellant on the river between St. Louis and Keokuk. He paid his fare, and secured a ticket as a passenger on the boat. The boat arrived at Quincy between 10 and 11 o'clock in the forenoon of the next day, and was landed above the wharf-boat, and near the coal yard, both stagings of the boat were put out side by side and close to each other, one end resting on the shore and the other over the bow of the boat. Appellee having been informed by the captain of the boat that the boat would not leave for two hours, and having some business in the city of Quincy, he undertook to leave the boat and go ashore, and while in the act of passing over the staging leading to the shore he was struck by a

coal box in the hands of two of the employees of the boat, in which they were carrying coal from the shore upon the boat, and injured.

Thus far there seems to be no material conflict in the evidence, but in regard to the details of the accident and in reference to who was in fault, there is a clear and decided conflict in the testimony. At the time the accident occurred there were no passengers on the boat but appellee, and he was the only witness in his own behalf in regard to the circumstances and manner in which he received the injury. The substance of his evidence was, that at about 11 o'clock the captain of the boat informed him the boat would not leave until 1 o'clock, and as he desired to go into the city to buy a carriage, he left the cabin of the boat and went down the steps to the lower deck, and there stopped and looked to see how the men carrying coal were going on and off the boat. He saw two men coming on the boat with a loaded box of coal on the " forward staging," and two going off the boat with an empty box on the " after staging." The stages were side by side, and he started to follow the two men with the empty box who were passing from the boat on the after staging. He had only gone a few feet when the men with the loaded box, crossing over from the " forward staging " to the " after staging," ran against him, the handle of the loaded coal box striking his hip, knocking him down.

If the account given by appellee of the transaction be the correct one, the judgment may be sustained. Appellee did not recklessly rush into danger. Before attempting to leave the boat he stopped and looked, and saw, from the manner in which the employees were coming upon and going from the boat, that he would meet no obstruction in passing along the " after staging." He had no reason to believe that the men with the loaded box would cross over from the forward staging to the after staging. No necessity existed for such conduct on their part, nor has any reason been shown why they did so. The passageway for appellee to leave the boat, so far as could be seen or anticipated, was clear, and from the manner in which appel-

lee saw the men carrying coal on the boat, and from the manner they were leaving the boat after the coal was unloaded, he had the right to suppose it was safe to leave the boat over the " after staging." But, it is insisted, it was the duty of appellee to remain in the cabin, and he had no right to leave the cabin of the boat until he reached his place of destination. We do not regard this position as tenable; the boat was not expected to leave the landing for two hours, and it would be unreasonable to hold that a passenger was compelled during all that time to remain in the cabin. Upon the landing of a boat, one object of putting out the staging is to afford persons interested an opportunity to pass to and from the boat, and we are not aware that appellant had any rule or regulation requiring passengers to remain in the cabin under the penalty of being run over by a "roustabout," and if they had, we are not prepared to hold that such a rule or regulation would be reasonable or obligatory upon a passenger.

The appellant, however, claims that the testimony of appellee is overcome by that introduced by it, and hence the testimony preponderates against the verdict. Five witnesses were introduced by appellant, in relation to the accident,—Wright, Bingham, Banks, West and Stewart,—most of whom claimed to know the facts in regard to the accident, and in the main they agree in saying that the men with the loaded box did not cross over from the forward to the "aft staging," but they were carrying in the coal on the "aft staging," and going off with empty boxes on the forward staging; that the men came in on a fast walk or trot, and when appellee was met on the staging they could not stop.

If the testimony of these witnesses be true, we do not think the appellee ought to recover, but it is apparent the jury did not regard their evidence as being entitled to a high degree of credit. Of these witnesses it appears that four of them, Wright, Bingham, Banks and West, were colored men. Wright and Bingham were "roustabouts," who were carrying the coal box when appellee was struck. Banks was not in the employ of

appellant at that time, but his only business was to run on a boat, sometimes as a fireman and at other times as a "roustabout." West was one of the porters on the boat, and Stewart kept a boat-store and furnished groceries and provisions for the boat. They all resided in Quincy except West, who resided in St. Louis.

It is true that no evidence was introduced to impeach the reputation of these witnesses for truth and veracity, yet, with the exception of Mr. Stewart, from their own statements it is apparent they were not such witnesses as would carry conviction to the jury of the truth of their statements. The jury were the judges of the credibility of witnesses, and where there was as clear a conflict in the evidence as here, it was for them to determine who told the truth. This they have done, and we are not prepared to say they misjudged the relative weight to be given the evidence of the witnesses.

Appellee's instructions one, two and three announce the familiar doctrine, that if the plaintiff, when injured, was in the exercise of ordinary care, and the defendant's servants failed to use ordinary care, in consequence of which the plaintiff was injured, then he might recover.

It is contended that, under the facts of this case, the instructions should have been so modified as to require of the plaintiff the exercise of extraordinary care. It will be observed that the boat had landed; staging was put out so that persons could pass to and from the boat; the boat was to remain several hours. So far as a prudent man could discover, it was neither dangerous nor perilous to attempt to leave the boat, providing the boat hands should exercise ordinary care and prudence. Under such circumstances we do not regard the position of appellee, when he received the injury, so dangerous as to require of him the exercise of extraordinary care. There is no similarity between this case and a case where a passenger attempts to leave a train of cars in motion before the platform is reached.

Appellee's fourth instruction announces the principle that the defendant, as a common carrier of passengers, was required to use the "utmost practicable care" for the safety of its passengers. This, it is said, requires a higher degree of care than the law imposes. We do not, however, take that view of the instruction.

In *Chicago, Burlington and Quincy Railroad Company* v. *George,* 19 Ill. 510, it was held that carriers of passengers for hire are bound to the utmost care and diligence in providing for their safety by the use of sufficient and suitable modes of conveyance and in managing, directing and using these means thus provided. In *Galena and Chicago Union Railroad Company* v. *Fay,* 16 Ill. 558, it was held, the degrees of care, vigilance and skill are the highest, and the responsibility is for the least neglect known to the law, short of insurance; and these, in their application, have respect to the particular mode of travel or transportation offered. See also, *Galena and Chicago Union Railroad Company* v. *Yarwood,* 15 Ill. 469, and *Frink* v. *Potter,* 17 Ill. 410, where the same rule is announced. Under these authorities, and subsequent cases, the principle announced in the instruction was correct.

Objection is made to appellee's instruction four and one-half, that it in substance directs the jury, if the defendant was negligent, it was guilty, regardless of any other consideration. We do not, however, so understand the meaning of the instruction. Upon an inspection of the language used, no logical inference can be drawn from it except this, that the negligence of the defendant may be proven as well by the witnesses of the defendant as of the plaintiff.

The refusal of the court to give defendant's instructions two and five is also relied upon as error. The second instruction is liable to at least one serious objection: it announces the proposition that the defendant was not liable for an injury plaintiff might receive in attempting to go on shore at an intermediate landing between Canton and Falmouth. No regulation of the defendant, no usage or law that we are aware of,

required plaintiff to remain on the boat from the time he took passage until he reached his destination.   On the other hand we perceive no reason why a passenger may not, upon the landing of a boat, go upon shore if his business requires it, and, at the same time, hold the boat liable for an injury received through the negligence of the employees of the boat, providing the passenger was in the exercise of ordinary care.

As to the other instruction, its substance was contained in instruction number one, which was given, and even if it was free from objection, which we do not concede, the court was under no obligation to give it, as we have often held it not to be error to refuse duplicate instructions.

As we perceive no substantial error, the judgment will be affirmed.

*Judgment affirmed.*