### GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. J. C. COOPER.

#### No. 99.

1. **Damages — Impaired Capacity for Pursuing Occupation.—** Plaintiff alleged that prior to his injuries he earned $1500 per year, and by his injury was made a cripple for life, and incapacitated from ever pursuing his occupation of stockman, which was the only business for which he was qualified; that he was forty-six years old, in good health, and would probably live twenty-five years longer. Demurrer to these allegations was properly overruled. It was proper to show that he was engaged in a particular business, and the loss from incapacity to pursue it.

2. **Same—Measure of Damages.—**The loss is the difference between what the annual earnings were before the injury, and what they would be, if any, with the diminished capacity; and when it has been shown that the injury is permanent, as was done in this case, it is proper to show what the expectation of life is, to enable the jury to form an estimate as nearly as possible of what the damage or loss may be.

3. **Evidence of Duration of Life.—**The testimony of the actuary, that a healthy man forty-six years old would probably live twenty-three and four one-hundredths years, was admissible. It was held in Railway v. Douglass, 69 Texas, 694, that the rule seemed to be that when death resulted from an injury, or when the evidence tends to show that the earning capacity is entirely destroyed, the testimony is admissible, otherwise not; but we are constrained to hold that under the circumstances of this case the evidence was admissible.

4. **Case not Adhered to.—**Railway v. Douglass, 69 Texas, 694, on the question of the admissibility of evidence of probable duration of life, in a case of permanent injury, not followed.

**5. Limiting Effect of Such Evidence.**—The following charge properly limits the effect of evidence touching plaintiff's age and expectancy of life : " The evidence adduced touching the age, probable expectancy of life, and earnings of the plaintiff, may be considered by the jury, if they find for the plaintiff, along with all the other evidence, in arriving at what loss, if any, plaintiff has sustained from diminished earnings since the injury, and loss of earning power; but the jury will not understand from this that they can from such facts fix a basis of computation without regard to plaintiff's capacity, if any, to earn money since the injuries and in the future; nor are such facts, if proved, to be considered otherwise than as circumstances to be weighed by the jury with all the other evidence, in arriving at a fair and just pecuniary compensation for the loss to plaintiff, if any, resulting directly from the injuries sustained."

**6. Alighting at a Flag Station.**—Though the train stopped at Randon only for water, and it was only a flag station, but there was a depot and platform there, and the undisclosed purpose of the train men to get water there, could not change the character of the station, and the evidence does not present a case coming within the decisions holding that when a train stops at a water tank or elsewhere than at a station, and the passenger leaves the train, he acts at his own peril, and his own negligence will prevent a recovery. If plaintiff exercised care in attempting to get aboard the train, after he had alighted, he was guilty of no act of negligence which would prevent a recovery for injuries caused by defendant's servants in starting the train without notice.

**7. Ordinary Care.**—See charge held not to impose any greater degree of duty upon the defendant than the exercise of ordinary care.

**8. Degree of Care at Station.**—Randon being a passenger station although a flag station, it was not error to refuse a charge " that a higher degree of care is required of train men at a passenger depot than at a stopping place for water only." So far as this case is concerned, it is immaterial whether the train stopped for water or to put off or take on passengers.

**9. Negligence, How Determined.** — It was not error for the court to qualify a charge asked, wherein specific acts named were declared not to be negligence in themselves, by the following addition : " The law does not undertake to declare what act or omission amounts to negligence, but it is for the jury to say from all the evidence whether a given act or omission amounts to negligence."

**10. Verdict not Excessive.**—Verdict for $15,000 for a left foot and ankle broken and crushed, and amputated below the knee, of a man forty-six years old and in good health, and earning $1500 per year, not excessive.

Appeal from Fort Bend.     Tried below before Hon. Wm. H. Burkhart.

*Pearson & Ballowe*, for defendant.—1. This being a case where death did not ensue from the injury, and where the disability was only partial, the probable duration of plaintiff's life, and his yearly earnings before he was injured, were improper foundations for the measure of damages, and such allegations in plaintiff's petition should have been suppressed. Railway v. Douglass, 69 Texas, 699; Wilson v. Railway, 38 Iowa, 364; 26 Iowa, 139; Pierce on Rys., 297.

2. It was error to admit the evidence of B. F. Houston, an actuary or insurance expert, to show the probable duration of plaintiff's life, such evidence being offered by plaintiff in connection with that as to plaintiff's

annual earnings before his injury, as the basis of the measure of damages in the case, the evidence being excepted to by defendant, because this was a case of partial and not total disability resulting from injury. Railway v. Douglass, 69 Texas, 699.

3. The court erred in refusing to give the following charge asked for by defendant, to-wit: "A higher degree of care is required of the train men at a passenger depot than at stopping places for water only." Beach on Con. Neg., sec. 57.

*Gresham & Jones* and *Mitchell & Mitchell*, for appellee.—1. Where one's physical or mental capacity to pursue his accustomed employment or business has been permanently destroyed or permanently impaired by an accident resulting from the negligence of another person, the age and probable duration of life of the injured person, the nature and extent of that business and its antecedent pecuniary results, and his mental or physical condition before the accident, are all proper, though not always essential, matters of averment in an action by the injured party to recover damages for the injury. They are the proper subjects of proof, and what may be proved it is not error to allege. Wade v. Leroy, 20 How., 34; Luck v. Ripon, 52 Wis., 196; Kinney v. Crocker, 18 Wis., 80; Nebraska City v. Campbell, 2 Black, 590; 3 Suth. on Dam., 261–268, 716–723.

2. The testimony as to what plaintiff's annual earnings from his accustomed occupation or business prior to the accident had been, was admissible, under the averments of plaintiff's petition, as an aid to the jury in estimating with some degree of certainty the damages, past and prospective, sustained by him from his injuries. Nebraska City v. Campbell, 2 Black, 590; Wade v. Leroy, 20 How., 34; Kinney v. Crocker, 18 Wis., 80; Indianapolis v. Gaston, 58 Ind., 224; Welch v. Ware, 32 Mich., 77; George v. Haverhill, 110 Mass., 506; Elkhart v. Ritter, 66 Ind., 136; 3 Suth. on Dam,, 267, 720, 722; McDonald v. Railway, 26 Iowa, 124; Simonson v. Railway, 49 Iowa, 87.

3. The defendant's train of cars, on which the plaintiff was at the time a passenger, having stopped at a station on its line of road and alongside the platform provided by the defendant for the accommodation of the public, the plaintiff had a right, without reference to the undisclosed purposes for which the train was stopped, and although the station was not the one to which the plaintiff was destined, temporarily to alight from the car, whilst stationary, on to such platform. Packet Co. v. True, 88 Ill., 608; Railway v. Riley, 39 Ind., 568; Clussman v. Railway, 73 N. Y. 606; Mitchell v. Railway, 30 Ga., 27; Cockle v. Railway, 7 L. R. C. P., 321.

4. Any movement which is made of a railway train after it has come to a stop should be preceded by ample warning to all passengers who

may be in the act of getting on; and a failure on the part of the company's servants in charge of the train to give such warning, is actionable negligence.   Curtis v. Railway, 23 Wis., 152; 27 Wis., 158; Keating v. Railway, 49 N. Y., 673; Mitchell v. Railway, 30 Ga., 27; Thomp. Car. of Pass., sec. 16, p. 225.

5.  The award of the jury was not out of proportion to the injury suffered, and the quantum of damages to be allowed in an action of tort is a matter peculiarly within the province of the jury.   1 Suth. on Dam., 810; 2 Thomp. on Neg., 1266; 2 Sedg. on Dam., 658, and note a; Railway v. O'Donnell, 58 Texas, 28.

GARRETT, Chief Justice.—Action to recover damages for personal injuries, brought by the appellee in the District Court of Fort Bend County against the appellant.   This is the second appeal; the first will be found reported in 70 Texas, 67.

Plaintiff alleged, that he received the injuries on May 9, 1885, while a passenger on defendant's line of railroad going from Rosenberg to Alleyton, at Randon, an intermediate station, where he had got off the cars on to the platform to deliver a message with which he was charged to some one there; that while he was attempting to get aboard of the train again, he was thrown down by reason of the negligence of defendant's servants who were operating the train, in suddenly and violently starting the train without the usual signals; and his left foot and ankle were so crushed and broken that it became necessary to have his leg amputated below the knee.   He also alleged, that prior to the injuries he was engaged in the business and occupation of a stockman, by which he earned the sum of $1500 annually; that in consequence of his injuries he had been crippled for life, and wholly disabled from ever pursuing his occupation, which was the only business for which he was qualified; that he was 46 years of age and in good health, and would probably live twenty-five years longer.

Defendant demurred to so much of the petition as set up plaintiff's "worldly condition" and the probability of his life and his annual earnings; and also answered by a general denial and plea of contributory negligence.

On the trial the demurrer was overruled by the court, and the case went to a jury, which returned a verdict in favor of the plaintiff for $15,000, and judgment was rendered accordingly.

Several assignments of error complain of the action of the court in overruling the demurrer, and in admitting evidence and charging the jury with reference to the expectancy of life and the earnings of plaintiff, because death had not ensued from the injury, nor had the earning capacity of the plaintiff been entirely destroyed.   It is also contended, that there is error in the giving and refusal of charges with respect to the de-

gree of care exacted of the defendant towards the plaintiff; and that the damages awarded are grossly excessive.

We find the facts to be:

1. At night, on May 9, 1885, the plaintiff, J. C. Cooper, on his return from the town of Wharton, where he had been attending court, to his home near Alleyton, Colorado County, purchased a ticket from the defendant company at Rosenberg, on the line of defendant's road, for passage over said railway from Rosenberg to Alleyton, going west, and entered the cars for the purpose of going to Alleyton.

2. Plaintiff had been charged by some one with a message to be delivered to Tom Jones, who was camped with his crowd of cow drivers at Randon, which was an intermediate station between Rosenberg and Alleyton, about seven miles west of Rosenberg. When the train reached Randon it stopped in a position so as to leave the last two cars of the train alongside of the depot platform. Plaintiff was in the next to the last car, and as soon as the train stopped he got off the rear end of the car on the platform and stood near the car steps and called for Jones, and delivered the message for him to some one in the crowd who had answered that Jones was asleep. Plaintiff turned to get back on the train, which was standing still, and just as he leaned forward and seized one of the iron rails put on the coach for the purpose of assisting passengers to board the train, with his right hand, and was in the act of seizing the other rail with his left hand, the train started without any warning, and plaintiff was thrown down under the train, and the wheels of the cars ran over his foot and ankle, crushing the same so that the foot had to be amputated below the knee.

3. Plaintiff testified, that the train was suddenly and violently started, thereby suddenly and violently jerking him down and under the train, about three or four feet east from the west end of the platform, and between the train and the platform; and that no notice whatever was given that the train was about to start before it was started. Neither was the engine bell rung nor the whistle blown, nor did the conductor say "all aboard." If notice had been given, plaintiff would have had a plenty of time to get back on the train in safety. Witnesses for the defendant testified, that the train was not started with a sudden jerk, because Miller couplings were used, and when they are used the train does not start with a jerk. They testified to their belief that notice of starting was given, but could not say so positively. We find that the train was started quickly and without warning.

4. At the time of the accident Randon was a flag station on the defendant's line of railway. A flag station is a station at which the trains of the defendant are not stopped unless there is some one on the train who desires to get off at the station, or the train is flagged by some one at the station desiring to get on. It is not the custom to stop unless the

train has been flagged, or there is some one aboard to be put off there. At the time of the accident there was at Randon a depot, platform, and waiting room; also a section house, stock pens, and a water tank; but no agent or telegraph operator. The stop made on the night of the accident at Randon was for water. The train had not been signalled for any one to get on, and there was no passenger to get off. Defendant's employes who were operating the train did not know that plaintiff had gotten off. When the train drew near to the station the engine whistled. Plaintiff had often gotten off and on defendant's train at Randon, and never had to notify the conductor or signal the train. He always considered it a regular passenger station.

5. Plaintiff was taken to Richmond for treatment on the morning of May 10, where he had skilled physicians and surgeons to attend him. His foot and ankle became so badly inflamed and irritated that on May 15 it became necessary to amputate his leg about half-way between the ankle and knee. He was confined to his bed about two months, and suffered greatly. His expense for board, medical treatment, nurses' hire, and incidental expenses in getting cured, amounted to $1040. Plaintiff's occupation was that of a stockman, and had been such from early boyhood. He was 46 years of age, and was strong and healthy, and was in good health at the time of the trial, and in a robust condition except as to his amputated leg. His expectation of life at the time of the accident, according to mortality tables, was twenty-three years. He had not pursued any other occupation than that of stockman, and his education was limited. He was expert in his business, and earned from $1500 to $2000 annually, besides attending to his own cattle and horses and other business about his place. Stockmen testified that a man as he was before the injury ought to earn from $800 to $1000 a year, but that his capacity as a stockman had been destroyed. By reason of the injury plaintiff's earning capacity was shown to be practically destroyed. He could not do anything in the line of stockman or boss cow driver, because he could not get about, and mount his horse and ride as before. He testified that he could not plow nor hoe, nor perform any other labor he thought himself capable of doing; that since the injury he had not been able to perform any kind of labor, nor had he made any money since the accident.

1. There was no error in overruling defendant's demurrer to the petition. Plaintiff's capacity to pursue his accustomed employment was at least permanently impaired, if not permanently destroyed; and in order to show the damage that he has sustained, and the extent of the injury, it was proper to show that he was engaged in a particular business, and the loss from the incapacity to pursue that business. The loss is the difference between what the annual earnings were before the injury and what they would be, if any, with the diminished capacity; and when it has

been shown that the injury is permanent, as was done in the case of the plaintiff, it is proper to show what the expectation of life is, so as to enable the jury to form an estimate as nearly as possible of what the damage or loss may be.    Hence there could be no error in admitting evidence to show what the plaintiff's occupation or business was, and what his annual earnings from his occupation had been prior to the injury.    Wade v. Leroy, 20 How., 34; Luck v. Ripon, 52 Wis., 196; Nebraska City v. Campbell, 2 Black, 590; 3 Suth. on Dam., 261–265, 716–723; Indianapolis v. Gaston, 58 Ind., 224; Welch v. Ware, 32 Mich., 77; George v. Haverhill, 110 Mass., 506; Elkhart v. Ritter, 66 Ind., 136; Railway v. Putnam, 118 U. S., 554.

In the last named case the court said:    "In an action for a personal injury, the plaintiff is entitled to recover compensation, so far as it is susceptible of an estimate in money, for the loss and damage caused to him by the defendant's negligence, including not only expenses incurred for medical attendance, and a reasonable sum for his pain and suffering, but also a fair recompense for the loss of what he would otherwise have earned in his trade or profession, and has been deprived of the capacity of earning by the wrongful act of the defendant."

We are of the opinion that in order to show the extent of plaintiff's injuries, it was proper to show in connection with the evidence that the injury was of a permanent character, and what his annual earnings had been, and what the probable duration of plaintiff's life was.    It is impossible for a jury to determine with any degree of exactness what damage has been sustained in cases of personal injuries, and it must be approximated by the aid of such evidence as will tend to show what it is; and having first ascertained how much the capacity for earning money has been diminished by an annual estimate, it would then become a proper subject of inquiry, how long the plaintiff would likely live.    The testimony of the actuary, that a healthy man forty-six years old would probably live twenty-three and four one-hundredths years, was admissible.    We are aware that it was held in Railway v. Douglass, 69 Texas, 694, that the rule seemed to be that when death results from the injury, or when the evidence tends to show that the earning capacity is entirely destroyed, the testimony is admissible, otherwise not.    In support of this proposition the court cited, Pierce on Railroads, 297; Wilson v. Railway, 38 Iowa, 364; McDonald v. Railway, 26 Iowa, 139.    Mr. Pierce states the proposition broadly, that "in actions for injuries not resulting in death, life tables are not competent evidence of the probable injury;" but he is not sustained by any authority to which we have had access.    The case in 26 Iowa, supra, is where there were injuries to the wife, "permanent in their nature, and likely to disable her during her life from rendering effectual service to her husband and family in the discharge of her household duties; and that in consequence a woman had been and was, and probably

would have to be, employed to do the work she had been accustomed to perform." Held, that under the circumstances there was no error in the admission of the Carlisle tables to show the expectancy of the life of the wife.

In Railway v. Putnam, supra, standard life and annuity tables, showing at any age the probable duration of life, and the present value of a life annuity, were held to be competent evidence in order to assist the jury in making an estimate of a fair recompense to the plaintiff " for the loss of what he would otherwise have earned in his trade or profession." The injuries to the plaintiff in that case were, " his collar bone, shoulder-blade, and several ribs were broken, and his sight, hearing, ease of breathing, and his capacity to do business impaired." He was an adjuster by profession, and his capacity to do business was impaired because he could not travel around as he formerly could, and was compelled to remain in an office, where he earned much less. Notwithstanding the case of Railway v. Douglass, supra, we are constrained to hold that under the circumstances the evidence was admissible. See rule intimated by Judge Bonner in Railway v. Willie, 53 Texas, 328; also City of Lincoln v. Smith, 45 N. W. Rep., 44.

From what has been said it also follows, that we do not think there was any error as complained under the twelfth and fourteenth assignments of error. The twelfth assignment is, that the court erred in its charge on the measure of damages in submitting the " loss of future earning power," and " should have qualified the language so as to submit the question as one of total loss of earning power."

The fourteenth assignment is based on the following paragraph of the charge: " The evidence adduced touching the age, probable expectancy of life, and earnings of the plaintiff may be considered by the jury, if they find for the plaintiff, along with all the other evidence, in arriving at what loss, if any, plaintiff has sustained from diminished earnings since the injury and loss of earning power; but the jury will not understand from this that they can from such facts fix a basis of computation without regard to plaintiff's capacity, if any, to earn money since the injuries and in the future; nor are such facts, if proved, to be considered otherwise than as circumstances to be weighed by the jury, with all the other evidence, in arriving at a fair and just pecuniary compensation for the loss to plaintiff, if any, resulting directly from the injuries received."

It appears from the paragraph of the charge above quoted that the effect of the evidence touching the plaintiff's age and probable expectancy of life was properly limited. Railway v. Putnam, 118 U. S., 554.

2. The refusal of the following requested instruction by the court has been assigned as error: " The contract of a railway company as a carrier is to carry a passenger to his point of destination, and not to afford him

opportunities to leave the car at intermediate stations, except at stopping places for refreshments; and if a passenger alights at such intermediate stations or stopping places, unless the servants of the carrier actually know the fact, or unless the servants of the carrier are ignorant through negligence, they are not bound to more than their usual care and watchfulness in starting the trains from such stations or stopping places. And if you believe from the evidence that plaintiff, Cooper, got off the train at night at Randon, an intermediate station or stopping place, and not the place he was bound for; that the train stopped there for water only; that it was not a regular passenger station; that the train men knew that no other passenger was to get on or off there at that time, and that was a fact; that the train men did not know that Cooper had gotten off there, and their ignorance was not through negligence on their part, and that they started the train from Randon in the usual careful way, without any negligence on their part, you will find for defendant.''

Some authorities hold, that the relation of carrier and passenger continues until the journey has been concluded, and that the passenger is entitled to protection while he is temporarily absent from the cars at a way station for a proper purpose. Packet Co. v. True, 88 Ill., 608; Railway v. Riley, 39 Ind., 568; Mitchell v. Railway, 30 Ga., 27. The exception that the passenger may alight for refreshments is well established; but we do not see, when the train stops at a station, why a passenger may not alight, using proper care, for a proper purpose, as speaking to some one on the platform, as in this case. This would be a reasonable implication from the contract of carriage. Again, it has been held, that when a train stops at a passenger depot there is an implied invitation to alight, and in starting the train again every reasonable precaution should be taken to prevent injury to any passenger who should alight, whilst getting off or back on the train, such as giving warning of the starting of the train by customary signals.

We do not think that the evidence here presents a case coming within the decisions holding that when the train stops elsewhere than at a station, as at a water tank or upon a side track, when the stop is made for the purposes of the railroad alone, and the passenger leaves the cars, he acts at his peril, and that his own negligence will prevent a recovery. It may be true that Randon was only a flag station, but it was a station for passengers to get on and off, and there was a depot and platform there, and the undisclosed purpose of the train men to stop there for water alone could not change the character of the station; and if the plaintiff exercised care in attempting to get aboard the train after he had alighted, he was guilty of no act of negligence that would prevent a recovery for injuries caused by the negligence of the defendant's servants in starting the train. These views we do not think are in conflict with Railway v. Foreman, 73 Texas, 314.

Plaintiff was certainly entitled to have the degree of care exercised towards him, as enunciated in the charge of the court, as follows:   "In this case the duty of defendant toward the plaintiff was to use such care to avoid injuring him as an ordinarily prudent and skillful person engaged in its business would have exercised under the same or similar circumstances; failing in which to plaintiff's injury, it would be guilty of negligence, otherwise not.   If the jury believe from the evidence that defendant's employes observed such care and skill in starting the train as an ordinarily prudent person in like business would have exercised under the same or similar circumstances, or if the jury believe that the injuries complained of were not the natural and probable consequences of starting the train as done, nor such consequence as defendant's employes in charge might reasonably have anticipated as likely to flow from such starting of the train, then return a verdict for defendant."

This charge did not impose any greater degree of duty upon the defendant than the exercise of ordinary care, which is finally the degree of care imposed by the requested instruction.   So there could be no error in refusing to give the instruction informing the jury as to the nature of the contract and the effect of a stoppage at an intermediate station, because the instruction admits the obligation of defendant to the same degree of care as contained in the charge of the court, and the case at least, depends on the fact as to whether or not defendant's servants used due care in starting the train.

3.  As it was shown by the evidence that Randon was a passenger depot, although a flag station, the refusal of the charge requested, that "a higher degree of care is required of train men at a passenger depot than at stopping places for water only," was not error; and it was immaterial, so far as the facts of this case are concerned, whether the train was stopped for water only or to take on or put off passengers, and no instruction was called for making any such distinction.

4.  Appellant's ninth assignment shows no error.   It is as follows: "The court erred in refusing to give the following charge asked by defendant, viz.:  'It is not negligence in itself to start a train from a passenger depot without ringing a bell, or blowing a whistle, or saying "all aboard."   The question of negligence must be determined from a consideration of all the facts in evidence in the case, and not simply by the question of whether or not the bell was rung, or the whistle blown, or "all aboard" called out by the conductor.'   And in giving the above with the following qualification attached to it, to-wit:  'The law does not undertake to declare what act or omission amounts to negligence, but it is for a jury to say, from a consideration of all the evidence, whether a given act or omission amounts to negligence, under the law's definition and explanation of negligence as is given in the court's charge.'   The qualification having the effect of allowing the jury to consider the omission to ring the

bell, etc., to be of itself negligence, and of destroying the meaning of the charge requested.''

The requested charge was given with the qualification.

5. The fifteenth assignment of error, that "the court should have granted a new trial, because the verdict of the jury is contrary to the preponderance of the evidence upon every issue submitted to the court, and to the law as applied to the issues by the court," is too general, and not in compliance with the rules.

6. While the verdict is a large one, we do not feel authorized to reverse the judgment on that account. Plaintiff paid out a large sum of money for board, medical attendance, and nurses; he suffered a great deal; was confined to his bed about two months; and the evidence shows that his business has been broken up, and that his capacity for earning money has been almost totally impaired.

We do not think the charge subject to the criticism made in the tenth assignment of error; and the complaint in the fifth assignment is not sustained by the record. Although evidence as to value of an annuity would have been admissible, the witness Houston did not testify as to what the value was.

There being no error in the record, the judgment of the court below will be affirmed.

*Affirmed.*

Delivered January 12, 1893.