## A. D. HARDIN v. FORT WORTH & DENVER CITY RAILWAY COMPANY.

Decided November 7, 1903.

**Carrier and Passenger—Degree of Care.**

· Where plaintiff shipped his furniture, etc., by rail, and under his contract rode in the car with it in order to look after and care for the property, and upon arrival at night at his destination the car was set out on a side track to be unloaded next morning, at which latter time plaintiff, while in the car looking after the property, was injured by reason of a collision in coupling, it was error for the court, in an action brought for such injury, to assume that the relation of carrier and passenger had ceased and to charge upon the theory that only ordinary care was required of the defendant.

Appeal from the District Court of Clay. Tried below before Hon. A. H. Carrigan.

*L. C. Barrett, Geo. A. Watts,* and *W. T. Allen,* for appellant.

*Stanley, Spoonts & Thompson,* for appellee.

SPEER, ASSOCIATE JUSTICE.—On July 11, 1902, one Toney shipped his household goods, hogs, chickens, etc., over the appellee's line of road from Avondale, Texas to Henrietta, Texas. Under the contract of shipment with the company, the appellant rode in the car to look after and care for the property. The car reached Henrietta late in the afternoon of the day—too late to be unloaded—and was cut out of the train and left on a side track until the return of the train from Wichita Falls on the next morning, when it was coupled onto and spotted at the platform where it could be unloaded. Appellant left the car that night and slept on the depot platform until about daylight, when it began to rain, and he and his son then went into the car. Some time about 8 a. m. or 9 a. m., while the appellant was yet in the car "fixing to feed the hogs and chickens," the train crew made the coupling which is alleged to have resulted in the injuries sued for.

The trial judge evidently considered that the relation of carrier and passenger had ceased to exist between appellee and appllant, at the time of the injuries, for he defined negligence as the failure to do that which an ordinarily prudent person would do under all the circumstances of the case, or doing that which an ordinarily prudent person would not have done under all the circumstances of the case, and refused the special charge correctly embodying a statement of the law applicable to that relation. His action in this particular is presented as error by appropriate assignments, which we think must be sustained. Arrington v. Texas & P. Railway Co., 6 Texas Ct. Rep., 69; Knauff v. San Antonio Traction Co., 6 Texas Ct. Rep., 240; Central Texas & N. W. Railway Co. v. Smith, 7 Texas Ct. Rep., 249. It has been repeatedly held in this State that common carriers must exercise the "utmost care" for the safety of their passengers. Gallagher v. Bowie, 66 Texas, 266; Railway

Co. v. Welch, 86 Texas, 203; Railway Co. v. Kennedy, 12 Texas Civ. App., 654. And although the expression is sometimes varied and a different phraseology employed, this is the measure of care in most, if not all, the other States of the Union. Hutch. on Carr., sec. 501; 9 Cent. Dig., col. 1014. It can make no difference that the vehicle is a freight car rather than the usual passenger coach, the degree of care is the same. Mexican C. Railway Co. v. Lauricella, 87 Texas, 277, 26 S. W. Rep., 301; Hutch. on Carr., sec. 538a. Naturally there are risks assumed by the passenger when he accepts passage on a freight train that would not be incident to travel upon a passenger train, but this does not lessen the degree of care to be exercised by the carrier in the operation of such freight train. It follows from what we have said that we are of opinion the evidence was not such as to authorize the trial court to assume in his charge that the appellant had ceased to be a passenger, and that he should at least have submitted that question to the jury, as requested.

In Ormond v. Hayes, 60 Texas, 180, it is said: "The evidence shows that the deceased was received as a passenger on defendant's train, and that his wife, infant child and nurse, who were under his charge, were also so received as passengers. The proof also discloses the fact that the defendant's servants, without objection, received from him, at the same time, as baggage to be by them transported, a considerable number of bulky articles of furniture, bedding and clothing, which they agreed and bound themselves to deliver to him at his point of destination. It does not appear that for this considerable amount of baggage, consisting of a number of articles, the defendant gave him any check, receipt, or any kind of evidence or token of their possession of it. Under all the circumstances disclosed in evidence, when we consider the nature and quantity of the baggage and the absence of any baggage checks or receipt to the deceased, we think he, as such passenger, had a right to go to the baggage car for the purpose of identifying and claiming his property and receiving it from the employes of defendants, and if he did no more than simply aid and assist the defendant's employes in identifying and removing his own baggage from the car to the platform, that the court stated the law too strongly against plaintiff when it informed the jury that these acts of his, in relation to his own baggage, constituted him a fellow servant with the employes of defendants. We think, under the special facts of this case as disclosed in the record, that the relation of carrier and passenger had not entirely ceased, for all purposes, to exist, and that the deceased had the right, under the facts of this case, to look after his baggage, and that by so doing, and by aiding the servants of defendants in selecting and removing it from the car, he did not lose all the rights of a passenger and thereby become a servant and an employe of defendants."

In St. Louis Southwestern Railway Company v. Humphreys, 25 Texas Civ. App., 401, 62 S. W. Rep., 791, the plaintiff, who was a passenger

on defendant's train, left the train, which had stopped for dinner, and went to the postoffice, which was about 100 feet distant from the train, on the side opposite from the depot, to purchase some stamps. After getting the stamps she started to return, when she noticed that the train was in motion. She ran, and in her effort to board it she was injured. She was held to be entitled to the protection of a passenger. So, in Missouri, Kansas & Texas Railway Company of Texas v. Overfield, 19 Texas Civ. App., 440, 47 S. W. Rep., 684, it is said: "We are of opinion that a passenger is not required to remain upon a train, from the starting point to the point of destination, and permitted to alight at an intermediate station only for some purpose connected with his journey. Getting off at intermediate stations, from motives of either business or curiosity, has been held not to deprive one of his character as a passenger, or of his right to precautions for his safety as such. We conceive the correct rule to be that he remains a passenger, on getting off at intermediate stations, so long as his object in doing so is not inconsistent with the character of passenger." Again, it has been held that the passenger loses none of the rights of a passenger by getting off at an intermediate station to deliver a private message to a person on the platform. Galveston H. & S. A. Railway Co. v. Cooper, 2 Texas Civ. App., 42, 20 S. W. Rep., 990.

This court held in Texas & Pacific Railway Company v. Dick, 26 Texas Civ. App., 256, 63 S. W. Rep., 895, in an opinion by Mr. Justice Hunter, that a passenger while yet upon the premises and depot grounds, though making his departure therefrom, was entitled to the protection due from a common carrier to its passengers.

The testimony as disclosed by the record before us tends to show that the car upon which appellant was riding was stopped temporarily at a point where it could not be unloaded, and with the understanding upon the part of both appellant and appellee that it would be placed at a more convenient point the next morning. It was the duty of appellee to put this car at the usual stopping place for such freight as this car was loaded with, and its duty was not performed until that was done. The evidence further indicates that appellant's absence from the car was temporary only, and that he at no time left the premises of appellee. He was rightfully on the car at the time of the accident. He was entitled to passage, and the protection of a passenger from Avondale to Henrietta. This means all the way from the starting point to the appropriate and usual stopping place at the final destination. Under the contract appellee would have had no right to prevent his presence in the car at the time of the injuries. These things being true, appellee's servants either knew or must be held to have known that he was in the car when they attempted to couple on to it. We think it was in the minds of the parties to the contract that appellant should remain in and about the car until it was delivered at the usual stopping place in Henrietta and a reasonable time for unloading allowed.

The assignments raising this question are therefore sustained.

We can not consider alleged errors which are confessedly in favor of appellant. Nor can we see how appellant has been prejudiced by the failure to charge upon the issue of discovered peril, if such issue can be in the case.

For the errors discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*