No. 2271.

THE TEXAS MEXICAN RAILWAY COMPANY *v.* MALCOM G. DOUGLASS.

1. STATUTE CONSTRUED.—Construing article 1128 Revised Statutes, *held:* That the word "morning," as used in that section includes the period of time between sun rise and twelve o'clock m., and if the sheriff of a county fails to adjourn the court on the morning of the fourth day of the term when the district judge had not appeared during the term until that time, and the judge should appear at any time before twelve o'clock m. of the fourth day and proceed to hold the term, a previous election

of a special judge on the morning of that day, is in operation to invest him with authority to preside as judge for the term.

2. EVIDENCE—DAMAGES.—Though evidence of mental suffering, naturally resulting from an injury, is sometimes admissible to show actual damage, yet, when it results from apprehension that the sufferer can not make a support for his wife and children, he can not in a suit for damages for personal injury be questioned regarding such apprehensions as a basis for damages.

3. GENERAL REPUTATION.—The fact being admitted in a suit for damages on account of the negligence of the employe of a corporation, that he was, legally in its employ, soon after the injury complained of, but controverted as to whether he was employed at the time the injury was inflicted, evidence of the "general impression" of the employes that such employe was employed on the date of the injury, is not admissible. It would be competent to show by the recollection of witnesses the date when the employe began to act as such; from that date the employer would be liable for his acts of negligence, if his assumption to act as employe was with the knowledge and consent of such employer.

4. MEASURE OF DAMAGES.—In an action for damages where death has resulted, or where the capacity of the person receiving personal injury is entirely destroyed, evidence is admissible to show the probable duration of the life of the injured party, had no injury been inflicted, and the value of an annuity for the life of such person calculated on the basis that he earned a designated sum per annum. Unless the capacity of the party to earn money was entirely destroyed by the injury, such evidence is not admissible.

APPEAL from Aransas. Tried below before the Hon. H. Clay Pleasants.

The facts are sufficiently stated in the opinion. There was a verdict for plaintiff for eleven thousand two hundred and thirty-one dollars and twenty-five cents.

*Thomas W. Dodd* and *Stanley Welch,* for appellant.

*Ballinger, Mott & Terry, F. E. McManus* and *Stayton & Kleberg,* for appellee: On testimony regarding general reputation, they cited Abbott's Trial Evidence, section 43; Walker v. Morris, 122 Massachusetts, 501; 3 Ohio, 94; 5 Ohio, 215; 5 Term Reports, 366; 6 Johns, 431; 5 Wendell, 233; 10 Michigan, 84.

That the title to office, or agency, is involved only as incidental to the right or liability of the corporation growing out of the acts of the officer or agent, it may be proved not only by the corporate record of election, if any, but equally well by parol testimony, either going directly to the fact of election or show-

ing that the person in question acted as such and was generally reputed so to be, they cited Potter v. Luther, 6 Johns, 431; Wilcox v. Smith, 5 Wendell, 233; People v. McKinney, 10 Michigan, 54.

On the evidence afforded by life tables, they cited 52 Texas, 24; 53 Texas, 318; 57 Texas, 304; 26 Iowa, 139; 49 Iowa, 87.

MALTBIE, PRESIDING JUDGE. On the first day of December, 1881, the appellee, Malcom G. Douglass, was and had been for about five weeks an employe of the appellant, the Texas Mexican Railway Company, his duties being to do whatever was required of him around its shops and yards, at Corpus Christi. That day he received a personal injury, while in the performance of his duties, under these circumstances: One Sutcliffe appeared at the yards of appellant, for the first time, on that morning, and was seen by appellee giving orders to the hands in the shop. Soon afterwards he ordered appellee to assist in carrying engine No. 24 from the yard to the round house. Under direction of Sutcliffe, the tender of engine No. 2 was fastened by a chain to No. 24, the purpose being that No. 2 should draw No. 24 after her. Before No. 2 started, Sutcliffe ordered appellee, who was standing on its tender, to get a block to serve as a fender to break the force of the collision of No. 2 and No. 24 when No. 2 should be stopped; and for that purpose one William Calvin, an engineer in the employ of the appellant, handed appellee a piece of railroad tie, about four feet long and four inches square. Appellee placed the piece of tie on the chain resting against the draw head of No. 2, holding it with one hand in nearly a vertical position, holding on to the projection of the tender above him with the other hand; and asked Sutcliffe, who was also standing on the tender, if that would do—appellee being inexperienced in such matters—and Sutcliffe replied that it would. Sutcliffe then caused No. 2, that was moving forward drawing No. 24 after it, to stop; No. 24 did not stop, but moved on by the momentum already acquired, and its dick plate, being higher than the draw head of No. 2, struck the block with such force as caused it, to use the language of a witness, to strike appellee's thigh "at an incline," shivering the bone and inflicting a permanent injury. The cause of the accident seems to have been the irregularity of the height of the dick plate of No. 24 and the draw head of No. 2.

The first question raised is, as to the legality of the term of

the court at which the judgment in this case was rendered. Article 1128, Revised Statutes, provides that if the district judge fails to appear at the time fixed by law for holding the court, and should no election of a special judge be had, the sheriff, or constable of the county in the absence of the sheriff, shall adjourn the court from day to day for three days, and if the judge shall not appear on the morning of the fourth day; and should no special judge have been elected, the sheriff or constable shall adjourn the court until the next regular term thereof. A special judge was elected on the morning of the fourth day; but the regular judge appeared at half past eleven o'clock a. m., of that day, assumed the functions of judge and proceeded to hold the term of the court. It is not necessary, in this case, to determine whether the special judge was legally elected. The sheriff not having adjourned the court on the fourth day, the judge of the district having taken charge before twelve o'clock m. of that day, he did appear, in our opinion, on the morning of the fourth day, and both the letter and spirit of the Statute was complied with. The common acceptation of the word morning, is any time from sunrise till twelve o'clock, and it should be so construed. (Rev. Stat., art. 3138.)

The appellee, while being examined as a witness, was asked the question: "What was and is now the condition of your mind as affected by and in relation to your injury?" and answered, over the objection of appellant, among other things: "I have always, since my injury, had feelings of fear regarding the future of my wife and family." The question and answer is assigned as error. It is said: "Liability for actual damages extends to mental suffering naturally resulting from the injury or wrong, whether such suffering be apprehension and anxiety from its depressing effects, or induced by its alarming character." (3 Southerland on Damages, 711.) But we think the mental suffering arising from apprehension as to the future of one's family is not a natural result of the injury, but depends upon the pecuniary condition and social relations of the sufferer, and would require the submission of elements of damage to the jury, in cases where the complainant was a married man and had a family dependent on his exertions for a support, that could not arise where there was no family or where the injured party was possessed of sufficient means for the maintenance of his family; so that a person with a large and dependent family would be entitled to larger damages than a person not so situated. Aside

from the irregularity of the rule, nothing is better calculated to excite the sympathy of a jury than the idea of a poor and dependent family caused by the wrongful act or omission of another, and we are of opinion that there was error in admitting the testimony.

It is also assigned as error that a witness was permitted to testify, over the objection of appellant, that the general impression among the men in the shops, and others, was that Sutcliffe was master mechanic of appellant on December 1, 1881, and subsequently up to May, 1882. One of the contested issues in the case was whether Sutcliffe was master mechanic of the company on the first day of December 1881, it being contended by the company that he was not appointed master mechanic until the twelfth of that month, and had no authority to act for it before that time; and record evidence was introduced showing that he was appointed on that day. It is argued that the term, "general impression among the men," is synonymous with general reputation, and as such admissible, as tending to prove the fact that Sutcliffe was acting master mechanic at the time alleged by appellee. We think that, if Sutcliffe was acting master mechanic of the company at the time claimed, with its knowledge or consent, it would be liable for his acts, whether there had been a formal appointment or not; and that any acts or facts conducing to prove this would be admissible. The appellant is sought to be held liable for the negligent acts of Sutcliffe, as master mechanic, done and committed in its employ as such on the first day of December, 1881. And the question is narrowed down to whether "the general impression of the men" is admissible to prove a date; for it is an admitted fact that Sutcliffe was master mechanic from and after the twelfth of December.

The evidence was most material, and no doubt of some weight, before the jury. It is a rule of evidence, subject to some exceptions, that general reputation is inadmissible to prove an objective fact. (1 Whart. on Evidence, 253, and numerous authorities there cited.) And we are of opinion that the testimony is not within the exceptions, and that there was error in permitting the witness to state "that it was the general impression among the shopmen that Sutcliffe was master mechanic on the first of December, 1881;" but the men, or such of them as were desired, should have been put on the stand to testify as to their recollec-

tion of the time when Sutcliffe commenced to act as master mechanic.

R. Thomas, actuary, testified, over the objection of appellant, as to the probability of the life of a healthy man of a certain age, and the value of an annuity for the life of such person, calculated upon the basis that he earned a certain stated sum of money per annum. The rule seems to be that when death results from the injury, or when the evidence tends to show that the earning capacity of the party is entirely destroyed, the testimony is admissible, otherwise not. (Peirce on Railroads, 297; Wilson v. Chicago & Penn. R. R. Co., 38 Iowa, 364; 26 Iowa, 139.)

We think, where the disability is shown to be only partial, such evidence would tend to confuse the jury. The appellee testified that he was engaged in the mercantile business; that it had not been very profitable, but that he had made enough to support his family for the three years next preceding the trial.

Appellant insists that the court erred in refusing to give the following instruction: "You are further instructed that you can not presume from the fact that the plaintiff was injured in the discharge of his duties as an employe of defendant, that the implement was improper or unsuitable, but the unsuitableness of the implement given plaintiff to work with must be proved like any other fact." It may be conceded that the charge requested enunciated a correct legal proposition, but it does not follow that the court should have given it to the jury. The issue in the case was not so much as to the unsuitableness of the implement, as, whether it was prudent to attempt to prevent the engines from colliding, by the use of the implement in question, and whether the implement was used in this instance in a proper manner.

This branch of the case, it seems to us, is very imperfectly developed. We are not informed as to what character of implement or contrivance was in general use on occasions like the present, or whether there was anything by which engine No. 24 could have been arrested with safety to the person using such implement or contrivance, or whether the implement used by appellee, in any other way than that used by him, would have likely proved more effectual or less hazardous. A number of other special instructions were asked and refused, which will not be noticed for the reason that we think the principles enunciated, so far as correct, were sufficiently presented in the gen-

eral charge. The sufficiency of the evidence to support the verdict is also questioned, as we are of opinion that the judgment should be reversed on account of the errors indicated, it would be improper to repress our opinion on the weight of the evidence.

Upon the whole, we conclude that the judgment ought to be reversed and the cause remanded.

*Reversed and remanded.*

Opinion adopted January 31, 1888.