# W. E. PITTMANN V. RAY BALADEZ

No. A-6530. Decided March 26, 1958.
Rehearing overruled April 30, 1958.
(312 S.W. 2d Series 210)

*Hammond & Hammond,* of Burnet, *McKay & Avery, C. N. Avery, Jr.,* and *John J. McKay,* of Austin, for petitioner.

The Court of Civil Appeals erred in failing to reverse and remand because of the admission of the testimony of the witness Spivey regarding his so-called tests, experiments and observations as to speed movement and violations of the law of other vehicles, on other occasions operated under similar circumstances and conditions. Klas v. Yellow Cab Co., 106 Fed. 2d 935; Lamar & Smith v. Stroud, 5 S.W. 2d 824; American Gen. Ins. Co. v. Jones, 152 Texas 99, 255 S.W. 2d. 502.

*W. K. McClain,* of Georgetown, and *Sam E. Wilcox,* of Abilene, for respondent.

In response to the point of petitioner cite: Missouri Pac. R.R. Co. v. Jarrard, 65 Texas, 560; San Antonio & A. P. Ry. Co. v. Parr, 26 S.W. 861, error refused; Huxford v. Kingsbury, 240 S.W. 1028, error dismissed.

MR. JUSTICE SMITH delivered the opinion of the Court.

This suit is a property damage action brought by petitioner in the District Court against the respondent wherein the respondent filed a cross action for personal injuries. The damages were alleged to have been sustained as the result of a collision between a truck operated by petitioner's driver, and a pickup truck operated by the respondent.

Trial before a jury resulted in a judgment that petitioner take nothing on his cause of action, and that respondent recover the sum of $35,000.00 damages as the result of personal injuries sustained.

Petitioner perfected an appeal as to both actions, and the Court of Civil Appelas has affirmed the judgment of the trial court. 304 S.W. 2d 601.

The application for writ of error presents nine points of error. We have determined that one of these points must be sustained. The result of such action will be to reverse the judgments of the trial court and the Court of Civil Appeals and remand both causes of action to the District Court for another trial. We first dispose of the other points presented before considering the point upon which the reversal is predicated. We forego a discussion of those points which, in all probability, will not recur upon another trial.

■■ We deem it necessary to write briefly upon the point which presents the question that the trial court erred in refusing to hold as a matter of law that the failure of respondent to keep a proper lookout was a proximate cause of the collision. We overrule petitioner's contention. The jury found in answer to a special issue that the respondent was negligent in failing to keep a proper lookout. The fact that respondent was negligent in this respect would not bar him from a recovery of damages if his negligence did not proximately contribute to his injuries. The evidence hereinafter set out in connection with our discussion of the point upon which the case is being reversed clearly raises a fact issue as to whether respondent's negligence was a proximate cause of the injuries sustained. This is a question for the

trier of the facts. This being true, the trial court did not err in refusing to set aside the answer of the jury to the special issue on proximate cause.

Petitioner next contends that the Court of Civil Appeals erred in failing to reverse and remand the cause for a new trial because of the exclusion by the trial court of the testimony of petitioner's witnesses who would have testified, if permitted, that he passed a black pickup truck about 7:15 p.m. and that later he was at the scene of the accident and saw a similar black pickup truck; that when he met this truck at a point less than one mile from the scene of the accident and as he was approaching a curve in the highway the "truck came straight ahead and forced me off the pavement."

■ We are not called upon to pass upon the question of the admissibility of the testimony. The record shows that when the testimony was first offered objection to its introduction was made and sustained. Later in the trial, the court apparently changed its ruling and informed counsel for petitioner that the testimony as originally tendered would be admitted. Petitioner replied that the witness had left the courtroom and had returned to his home and that under the circumstances "he would not insist on recalling the witness in person." Under such circumstances, no error was committed and the petitioner cannot be heard to complain when it is shown that the trial court ruled in favor of the admission of the proffered testimony and the petitioner made no showing that the witness was unavailable, but elected to stand on his original exception to the action of the court in first sustaining the objection. The point is overruled.

■ There remains one other point which requires consideration. In view of another trial, we point out that the trial court should have sustained Pittman's special exception to the Baladez pleadings wherein it was alleged, in substance, that his inability to do farm and ranch work was a source of continual worry because of his inability to support his family and constituted mental anguish. In the event such pleadings remain the same on another trial, and exception is filed as before, it will be the duty of the trial court to sustain the exception. See Texas Mex. Ry. Co. v. Douglas, 69 Texas 694, 7 S.W. 77; Jarbet Co. v. Hengst, Texas Civ. App., 260 S.W. 2d 88, no writ history.

We come now to consider the question which requires a reversal. The principal fact issues to be determined in the trial

court was the sharply drawn issue as to which vehicle involved crossed the center stripe.

The trial court admitted, over the objection of the petitioner, certain evidence given by Mr. Joe Spivey, a Constable of the county where the accident occurred, as to his observation of the movement and speed of fifteen or twenty trucks of similar type to that owned by petitioner. It is the contention of the petitioner that this testimony was inadmissible and prejudicial and the Court of Civil Appeals erred in failing and refusing to reverse and remand this cause for a new trial.

■ Before proceeding further with a discussion of this question, which is one of admissibility of evidence, we hold that since the application for writ of error contains points coming within our jurisdiction, we have jurisdiction to pass upon each and every point, including those involving the admissibility of evidence. Holland v. Nimitz, et al., 111 Texas 419, 232 S.W. 298, 239 S.W. 185; Moore v. Davis, Texas Comm. App., 27 S.W. 2d 153; Commercial Standard Ins. Co. v. Robinson, 137 Texas 184, 151 S.W. 2d 795.

We think the following statement of the evidence and references to the pleadings of the parties is necessary for a full understanding of our holding on this question. The only witnesses to the collision were the respondent, Ray Baladez, the driver of a 1939 pickup truck, and C. W. Wallis, the driver of petitioner's 1953 model International truck. These two will hereafter, for convenience, be respectfully referred to as Baladez and Wallis. The petitioner, the owner of the International truck, will be referred to as Pittman. The witness, Mr. Joe Spivey, Constable, will be referred to as Spivey.

The collision occurred on Highway 29 in Williamson County, Texas, at a point about two miles west of Liberty Hill. Wallis was driving the Pittman truck in an easterly direction, whereas, Baladez was driving in a westerly direction and the collision occurred after dark at about 7:30 in the evening of October 16, 1955. Pittman alleged and Wallis testified that the pavement at the point of impact was twenty feet wide and that there was a well-defined center stripe on the highway. Pittman alleged that Wallis drove his truck in a careful and prudent manner at a lawful rate of speed, and Wallis testified that he kept his truck at all times involved on the south side of the highway and south of the center stripe and that he did not cross the stripe at any time before the collision or after; that as he approached

the point of the collision he was traveling at a speed of "right at" 45 miles per hour. Pittman further alleged that Baladez was proceeding at a high rate of speed in excess of that permitted by law; that Baladez came around a curve in the highway at such speed, and that he failed to keep a proper lookout; failed to keep his vehicle under proper control, and failed to slow down, and that Baladez did "suddenly and without warning, drive the Ford pickup truck across the center line of the highway and into his left (wrong) or south side of the highway, directly into and against the vehicle owned by Pittman, thereby causing damage to the Pittman truck. Wallis testified to facts which would have supported an affirmative finding on all of these allegations.

On December 2, 1955 Baladez filed his original answer consisting of a general denial and a specific allegation that "the collision was proximately caused by the negligent acts of Wallis in unlawfully driving on the (his) left-hand side of the road, violating the statute of Texas by obstructing the highway, and driving the truck of plaintiff's into and upon the car of the defendant, sideswiping the same and causing this defendant serious bodily injury. Said collision was caused solely by the unlawful, negligent, and wrongful acts of plaintiff's agent, Wallis." Each witness, Baladez and Wallis, testified that the other crossed the center stripe. Each testified that he pulled his truck to his right.

Relative to the speed of the Pittman truck, Baladez testified that he had observed the speed of cars in the past, and that based on his observation of the speed of trucks, it was his opinion the Pittman truck was approaching him traveling in an easterly direction at a rate of speed of "about fifty-five. Over fifty-five to sixty" (miles per hour). John Louis Bergstrom, a representative of the Texas Department of Public Safety, corroborated Wallis' testimony that the track of the blown-out left front tire of the Pittman truck was on the south (Wallis') side of the highway going east from the point where the truck started on the south side to the point where the truck stopped, which was across a bridge on the highway. All of the witnesses are in agreement that the Baladez truck came to a stop on the south (Wallis') side of the highway. Bergstrom testified that all the debris was on the south side of the highway. Witness, Felan, testifying for Baladez, said there was glass on the north (Baladez's) side of the highway, and the witness, Asher, testified to glass being on both sides of the highway.

Spivey arrived at the scene of the accident shortly before Bergstrom. At that time he observed some glass on the north side of the road. Spivey identified a picture of the scene of the accident and testified that the general location of the collision was in the vicinity of the entrance to Hall Ranch. He described a curve, designated by some witnesses as a slight S curve in the road as you approach the Hall Ranch from the West. The picture referred to was taken from a point 300 feet west of a mail box, and the box was located near the entrance to the ranch and both are on the south side of the highway. Spivey testified that he was unable to tell that night "what was wrong;" that "we taken our flashlights before we went on in [meaning to the hospital to check on Baladez] and tried to check to see which side, which one was wrong on there, and we couldn't tell nothing about it from flashlights." Spivey said he went back to the scene that night after going to the hospital. It seems that both Spivey and Bergstrom went to the hospital and both returned to the scene of the accident. Bergstrom testified that he used a large spotlight in checking the area. He testified definitely as to the conditions he found out there that night. Spivey first testified that he was unable that night to reach a conclusion. Over proper objection, Spivey was permitted to testify to the following facts which we hold were inadmissible, and reasonably calculated to cause and probably did cause the rendition of an improper judgment in this case. Spivey testified that after the accident at various times up until about two days before the dates of his testimony, he observed some fiifteen or twenty trucks of the type of the Pittman truck; that in making these observations a stop watch was used and that he was stationed "even" with the gate leading into Hall's Ranch at times, and on other occasions "I have got down below and checked it from both ways." In answer to one question, he said: "Well, I have checked around fifteen or twenty of that type there on that, and just to clear my mind upon what I though about it." He testified that the speed these trucks were traveling was "around anywhere from fifty-five to sixty miles;" that he sat and watched the trucks "topping the hill," and the hill was about three or four hundred yards from where he was seated. Then the following questions and answers:

"Q.   Now, then, did you observe these different motor vehicles such as we have involved in this case here, this pipeline truck, did you observe them at different speeds?

"A.   Yes.

"Q.   What speed did you observe them at?

"A.  Well, some of them would make as high _____ in twelve seconds, and some would run on up. Some of them, once in a while, one of them would make it in forty seconds.

"Q.  Now, I am asking you, did you determine any of these motor vehicles were running at the rate of, say, fifty miles per hour _____ trucks running at the rate of fifty miles per hours?

"A.  Yes, sir, nearly all of them.

"Q.  Now, did you observe any running at the speed of sixty miles per hour?

"A.  Yes, sir.

"Q.  Now, I'll get you to state, Mr. Spivey, whether or not a truck running at fifty to sixty miles an hour can stay on its side of the road on this curve that you observed it on?

"A.  No, sir, nine out of ten of them will come over every time just after they make this curve, and just when they turn back their front will come over every time just after they pass that curve."

With the testimony sharply drawn as between Wallis and Baladez, as to who crossed the center stripe, and with this testimony of Spivey's observation of fifteen or twenty trucks, as above outlined before it, the jury found:

(a)  that Baladez was not driving at a high and excessive rate of speed;

(b)  that Baladez failed to keep a proper lookout;

(c)  that such failure to keep a proper lookout was *not* a proximate cause of the collision;

(d)  that Baladez did not fail to maintain proper control of his truck;

(e)  that Baladez did not so operate his truck that said truck or a part thereof crossed over the center line of the highway and into his left-hand (or southerly) side of the highway just prior to and as he approached the point of the collision;

(f) that Baladez did not fail to yield to Wallis, one-half of the paved portion of the highway;

(g) that Wallis was not acting under an emergency;

(h) that Wallis was driving his truck at a speed in excess of 45 miles per hour;

(i) that Wallis operated his truck in such manner that said truck or a part thereof crossed the center line of the highway and over into his left-hand (or the northerly) side of such highway just prior to and as he approached the point of the collision in question;

(j) that Wallis failed to yield to Baladez one half of the highway, failed to keep a proper lookout and failed to keep his truck under proper control and that each and every act of negligence was a proximate cause of the collision and resulting injuries substantiated by Baladez.

The Court of Civil Appeals upheld the admission of Spivey's testimony upon the ground that it is permissible to prove the existence or nonexistence of a fact by experiments made for that purpose under circumstances substantially the same as those existing at the time of the occurrence or nonoccurrence of the alleged fact, citing Panhandle S. & F. Ry. Co. v. Haywood, Texas Civ. App., 227 S.W. 347, er. ref.; Dallas Ry. & Terminal Co. v. Darden, Texas Comm. App., 38 S.W. 2d 777, 17 Texas Jur. Sec. 142, p. 401. The decision of the preliminary question as to whether the conditions are so substantially similar as to authorize the introduction of the evidence is necessarily for the trial court, and he had considerable latitude in deciding it. Panhandle S. & F. Ry. Co. v. Haywood, supra. However, an examination of the record reveals that the so-called experiment was not an experiment at all, but merely an observation of other trucks of somewhat similar type as the one in question.

■ The evidence under attack is principally inadmissable for the reason that the test was made under circumstances not substantially the same as those existing at the time of the occurrence of the collision. Ervay-Canton Apartments v. Hatterick, Texas Civ. App., 239 S.W. 2d 150, ref. n.r.e.; Texas & Pac. Ry. Co. v. Graham & Price, Texas Civ. App., 174 S.W. 297, er. ref. None of the drivers being observed were aware of the tests and record is devoid of evidence that either speed or mere habit was responsible for the trucks crossing the center line. In none of

the tests made by Spivey did any vehicle approach the oncoming trucks being tested as did the Baladez truck on the night of the collision. The fact that most of the trucks observed were traveling at a speed ranging from fifty to sixty miles per hour was inadmissible as evidence to establish the fact that the Pittman truck was traveling at a similar speed. The evidence as it now stands fails in the first instance to pass the relevancy test. There must be some logical connection, either directly or by inference, between the fact offered and the fact to be proved, to make the former circumstance relevant to the latter. 17 Texas Jur., Sec. 105, p. 337.

■ This brings us to a consideration of the question of whether the improper evidence probably influenced the verdict unfavorably to petitioner. This question is to be determined as a matter of our judgment in the light of the record as a whole. Pittman, in order to discharge his burden of establishing the inadmissible evidence was prejudicial, was not required to prove or demonstrate that but for the erroneous action of the trial court in admitting the testimony, a different judgment would necessarily have resulted. See Texas Power & Light Co. v. Hering, 148 Texas 350, 224 S.W. 2d 191, 192; Southwestern Greyhound Lines v. Dickson, 149 Texas 599, 236 S.W. 2d 115. It was only necessary that he establish that the evidence was reasonably calculated to and probably did cause the rendition of an improper judgment. See American Gen. Ins. Co. v. Jones et al., 152 Texas 99, 255 S.W. 2d 502; Missouri-Kansas-Texas Railroad Co. v. McFerrin, 156 Texas 69, 291 S.W. 2d 931, 944; Rules 434 and 503, Texas Rules of Civil Procedure.

■ Since the question of which vehicle crossed the center stripe was a vital issue in the case, and since the admissible evidence introduced by both parties was so evenly balanced, we conclude that the introduction of the incompetent evidence given by Spivey, in the light of the record as a whole, amounted to such a denial of the rights of the petitioner as was calculated to cause and probable did cause the rendition of an improper judgment in the case.

The judgments of the trial court and the Court of Civil Appeals are reversed and the cause is remanded to the trial court for a new trial not inconsistent with this opinion.

Opinion delivered March 26, 1958.

Rehearing overruled April 30, 1958.