Katherine Abbey CHRISTIE et al., Appellants,

v.

Morris W. BREWER, Appellee.

No. 11139.

Court of Civil Appeals of Texas.

Austin.

Jan. 22, 1964.

Rehearing Denied Feb. 12, 1964.

Baker, Botts, Shepherd & Coates, Robert A. Hall, Houston, for appellants.

Ellis F. Morris, Houston, for appellee.

HUGHES, Justice.

This suit is brought to rescind purchases of stock in Ambrosia Minerals, Inc., by Morris W. Brewer from B. V. Christie and Co., made during the period April 12, 1957 through February 21, 1958, and to recover the purchase price paid therefor and 6% interest thereon from the purchase dates, less certain dividend receipts.

The persons sued were Katherine Abbey Christie, a feme sole, who was sued individually and as Independent Executrix of the Estate of Byron V. Christie, deceased, Mrs. E. A. Millar, a feme sole, and Calvin L. Allen.

B. V. Christie and Company was at the time of the transactions involved in this suit a proprietorship, owned by B. V. Christie and wife Katherine Abbey Christie. Upon the death of Mr. Christie all interest in B. V. Christie and Company became vested in Mrs. Christie, subject to the administration of his estate.

Mrs. E. A. Millar, a sister of Mrs. Christie, held an executive position with B. V. Christie and Company during the period in which the presently involved transactions occurred.

Calvin L. Allen was a salesman for B. V. Christie and Company when the purchases complained of were made.

Liability of Mrs. Christie is sought solely on the ground that she is the owner of the assets of B. V. Christie and Company.

The liability of Mr. Allen and Mrs. Millar was sought to be predicated upon their alleged violation of the Texas Securities

Act[1] and the Federal Securities Act of 1933.[2]

Trial was to a jury. Based upon the jury verdict, judgment was rendered for appellee for the sum of $20,139.08, plus interest as sued for, against the persons sued, jointly and severally. These persons, appellants here, seek reversal and rendition of judgment in their behalf or, in the alternative, that the cause be reversed and remanded for a new trial.

Appellants seek rendition of judgment in their favor because of their contention that appellee did not make a tender of stock in compliance with Art. 581–33, Vernon's Ann.Civ.St., which provides, in part:

"Every sale or contract of sale of any security made in violation of any provision of this Act shall be voidable at the election of the purchaser, who shall be entitled to recover from the seller in an action at law, upon tender to the seller of the security sold, in proper form for transfer, together with the amount of all dividends, interest, and other income and distributions received by the purchaser from or upon such security, the full amount paid by such purchaser for such security, with interest from the date of purchase; * * * and provided further, that no purchaser shall bring any action under this Act against the seller unless (1) at least fifteen (15) days before filing suit, he shall have made a written demand on the seller for a refund of the full amount paid by the purchaser for the security, with interest from the date of purchase, less the amount of any income from such security that may have been received by the purchaser, and he shall have tendered to the seller the securities sold in proper form for transfer, and (2) the seller shall not have made such refund and

accepted such tender within the said fifteen (15) days."

In making demand upon appellants for a refund of the amount paid for the 13,000 shares of Ambrosia stock purchased from B. V. Christie and Company, appellee erroneously stated that the amount paid for them was $24,279. Appellee concedes that the correct amount should have been $22,-325.97.

■ The statute, supra, does not require that the demand for refund state the amount paid for the stock. Appellee in making demand did more, albeit inaccurately, than was required of him. We do not believe that he thereby forfeited his rights under the Securities Act. The excessive demand caused no harm. It was a matter concerning which the truth was peculiarly known to appellants, as well as to appellee, hence the error was equally palpable to them, and they were not misled. In Athans v. Jones, 277 S.W.2d 192, Fort Worth Civil Appeals, no writ history, it is stated, "We think the true rule is that an exorbitant demand does not excuse a tender of the amount actually due."

Appellants have waited for more than three years before complaining that the demand was excessive. They do not now say nor have they ever indicated that they would have made refund had the proper amount been demanded.

We hold that this point is without legal or equitable support, and it is overruled.

Appellants have several other points upon which they rely for a reversal and remand of this case. We have concluded that the first three points which relate to the failure of the Court to quash the jury panel or grant a mistrial because of remarks made by counsel for appellee to such jury panel on their voir dire examination should be sustained. Accordingly, we will discuss such points and only such other points as may arise upon re-trial.

1. Art. 581 V.A.C.S. Some of the stock sales were made when the predecessor of this Act was in effect. See Acts 1955, 54th Leg., p. 322, Ch. 67.

2. Title 15, Secs. 77a–77aa, U.S.C.A.

Prior to the voir dire examination of the jury panel appellants made and presented a motion in limine requesting that the Court instruct counsel for appellee not to mention to such panel, either directly or indirectly, that defendant (appellant) Calvin L. Allen was at that time under indictment by the United States of America or the fact that the defendant (appellant) Mrs. E. A. Millar had been named in an indictment as a co-conspirator with Calvin L. Allen. This motion was overruled, after which counsel for appellee stated to the jury panel:

"Now, we think the evidence will show in this case that one of the parties who is a defendant is under indictment by the Federal Grand Jury for matters arising out of these same transactions, and that another one of the defendants is named in the Federal indictment as a co-conspirator in connection with matters arising out of this lawsuit."

Appellants objected to these remarks when made. They also filed a motion to strike the jury panel and, in the alternative, for a mistrial based on the improper and inflammatory remarks of counsel for appellee. This motion was overruled. On the following day the Trial Judge announced that he was changing his previous order on appellants' motion in limine and was sustaining their request for the instructions mentioned above. Upon this occurrence, counsel for appellants again moved for a mistrial, stating:

"In light of the ruling of the Court sustaining my first two paragraphs in the motion in limine, the defendants again would like to move for a mistrial in this case on the ground that plaintiff's remarks to the jury during the voir dire examination to the effect that one or more of these defendants were under indictment would be so prejudicial as to make it impossible for these defendants to receive a fair jury trial from the jury selected from that jury panel, especially in the light that this matter would be just sort of suspended in the air now and they will be wondering which of the defendants were indicted and on that ground we move for a mistrial."

This motion was overruled. The trial was conducted before a jury selected from the panel which heard the remarks of appellee's counsel.

■■ The pendency of this indictment was not admissible evidence. Quesada v. Graham Ice Cream Co., 207 S.W.2d 120, Austin Civil Appeals, no writ history, cited with approval by the Supreme Court in Condra Funeral Home v. Rollin, 158 Tex. 478, 314 S.W.2d 277.

Appellee contends that this error is harmless under Rule 434 Texas Rules Civ.Proc., which provides, in part, that no case shall be reversed on appeal unless " * * * the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case * * *."

In Peek v. Parker, 210 S.W.2d 619, Fort Worth Civil Appeals, no writ history, the defendant was asked, "By the way, I believe you are under felony indictment in this court? A. Yes." The Trial Court instructed the jury not to consider the question and answer, but he refused to grant a mistrial motion. In holding this reversible error the Court of Civil Appeals stated:

"We have found no decision declaring it to be harmless error to undertake to impeach a witness by showing an indictment against him. The verdict in the present case is reasonable as to amount, and there is ample evidence to support the findings relating to liability. But it must also be said that the evidence would have supported contrary findings, both as to liability and as to damages. Evidence that a person is under a felony indictment is from its nature calculated to be damaging. We do not believe that the error was harmless, nor do we believe that an instruc-

tion from the court would have removed the harm. Throughout their consideration of the case the jury could not have forgotten that the defendant had been indicted as a felon, and it is reasonably probable that they considered such fact in arriving at their verdict. To hold otherwise, we believe, would set a precedent that would invite commission of the same error in similar situations."

We have read the long statement of facts. The evidence is as conflicting as it is possible for evidence to be. If under these circumstances the error committed be held benign then in every such case hereafter tried evidence of indictments could be freely used with impunity. We do not know what a jury will do upon re-trial. There is ample evidence to support a verdict either way. We do know that appellants did not receive a fair trial and that they were irretrievably harmed by the cloud cast over them.

In Pittman v. Baladez, 158 Tex. 372, 312 S.W.2d 210, the Court in discussing Rule 434 stated:

"This brings us to a consideration of the question of whether the improper evidence probably influenced the verdict unfavorably to petitioner. This question is to be determined as a matter of our judgment in the light of the record as a whole. Pittman, in order to discharge his burden of establishing the inadmissible evidence was prejudicial, was not required to prove or demonstrate that but for the erroneous action of the trial court in admitting the testimony, a different judgment would necessarily have resulted. * * * It was only necessary that he establish that the evidence was reasonably calculated to and probably did cause the rendition of an improper judgment. * * *

"Since the question of which vehicle crossed the center stripe was a vital issue in the case, and since the admissible evidence introduced by both parties was so evenly balanced, we conclude that the introduction of the incompetent evidence given by Spivey, in the light of the record as a whole, amounted to such a denial of the rights of the petitioner as was calculated to cause and probably did cause the rendition of an improper judgment in the case."

We have a similar situation here and we hold that the error reflected was not harmless under Rule 434.

Point four asserts error in the conditional submission of Issue 32. The two involved issues are:

"Special Issue No. 31

"When do you find from a preponderance of the evidence that Morris W. Brewer discovered that the Ambrosia Minerals, Inc. stock was not registered under the Securities Act of the State of Texas?

"Answer: By stating the month and year.

"A. May 1959.

"If you have answered Special Issue No. 31 by date prior to July 16, 1957, then answer:

"Special Issue No. 32

"Do you find from a preponderance of the evidence that Morris W. Brewer by the exercise of ordinary care should have discovered prior to July 16, 1957 that Ambrosia Minerals, Inc. stock was not registered under the Securities Act of the State of Texas?

"Answer: 'We do' or 'We Do Not.'"

Issue 31 was answered: "May 1959." Issue 32 was not answered. From April 12, 1957 until August 22, 1957 the statutes which governed the transactions in question were those found in The Securities Act, General and Special Laws of the State of Texas, 54th Legislature, Regular Session, 1955 and which statutes were also set out in Article 579–1 through Article 579–42 of The Securities Act, Vernon's Texas Civil Stat-

utes. On August 23, 1957, Articles 581–1 to 581–39 of The Securities Act, Vernon's Texas Civil Statutes, became effective and repealed the statutes cited in the preceding sentence. Article 581–33 of The Securities Act, Vernon's Texas Civil Statutes under which the appellee brought this action provides that

" * * * any action by a purchaser to enforce any right or liability based upon any sale made in violation of any provision of this Chapter or any Acts predecessor thereto or amendatory thereof or upon any misrepresentation made in connection with such sale, shall be commenced within two (2) years after the purchaser thereof has knowledge that such sale was made in violation of any provision of this Chapter, or Acts predecessor thereto or amendatory thereof, or upon a misrepresentation, or within two (2) years after such purchaser, by the exercise of ordinary care, should have discovered that such sale was made in violation of this Act or Acts predecessor thereto or amendatory thereof, or upon a misrepresentation, and not thereafter; * *."

This same two-year limitation was contained in § 34 of The Securities Act, General and Special Laws of the State of Texas, 54th Legislature, Regular Session, 1955, and Article 579–34 of The Securities Act, Vernon's Texas Civil Statutes.

Appellants pled that appellee's cause of action was barred by the two-year limitations referred to above.

This suit was filed July 16, 1959.

Appellants concede that Issue 31 was properly submitted. The answer "May 1959" obviated the defense of limitation based on actual knowledge. It had no bearing, however, on the defense of limitation based on knowledge which appellee should have gained by the exercise of ordinary care as provided in Art. 581–33, supra. Special Issue 32 was properly framed and should have been unconditionally submitted if the evidence raised the issue. As to this appellants state the evidence was sufficient and appellee enters a denial. We will not attempt to resolve this dispute by a review of the entire statement of facts. Apparently the Trial Court thought the evidence ample. If upon re-trial he reaches the same conclusion, then the issue should be unconditionally submitted.

Points eight and nine are jointly briefed. they complain of the failure of the Court to admit evidence to the effect that appellant Allen had received instructions from his employer, B. V. Christie and Company, not to solicit sales in Ambrosia Minerals Inc. stock, and in the failure of the Court to submit an issue to the jury inquiring if Allen in making stock sales to appellee was acting within the scope of his employment.

These points are overruled. The evidence is conclusive, in our opinion, that Allen possessed apparent or ostensible authority to solicit appellee for the purchase of stock. He was an employed salesman of B. V. Christie and Company. A salesman without authority to solicit is of a very peculiar breed. Only by charging appellee with knowledge that the Ambrosia stock was unregistered and that this fact made it illegal for Allen to solicit its sales could the question of Allen's authority arise under this record. The jury negatived knowledge by appellee that the stock was unregistered when purchased by him. See as to apparent authority, 2 Tex.Jur.2d Agency, Secs. 43–56. Also see Baker Hotel of Dallas v. Rogers, 157 S.W.2d 940, writ ref., w. o. m., Dallas Civil Appeals.

Points eleven and twelve are briefed jointly. They relate to the failure of the Trial Court to admit evidence to the effect that appellee had admitted that he had left the employment of Bache and Company not as he had testified for "health reasons," but because he had fraudulently taken large sums of money belonging to his employer and to customers of his employer.

Appellants cite no authorities to sustain the admissibility of this evidence.

They merely say that it would impeach appellee's testimony that he quit Bache and Company for reasons of health. These points are overruled. A witness may not be impeached as to statements made by him pertaining to collateral matters. The reason that appellee left the employment of Bache and Company is not an issue in this case. Also, the credibility of a witness may not be attacked by proving particular acts of misconduct. See Texas Law of Evidence, McCormick and Ray, 2d Ed. Secs. 690 and 655.

Point thirteen is that the Court erred in submitting Issue One to the jury over appellants' objections. The issue and objections to it are:

"Do you find from a preponderance of the evidence that B. V. Christie & Co., its agents, servants or employees, issued, distributed or published within this State any circular, advertisement, phamphlet, prospectus, program or other matter as to Ambrosia Minerals, Inc. on or about April 12, 1957?

"Answer 'We do' or 'We do not.'

"The defendants objected to the submission of Special Issue No. 1 on the grounds that there was no evidence to raise the issue, the evidence was insufficient to raise the issue, an affirmative finding on the issue would have been against the great weight and overwhelming preponderance of the evidence, said issue constituted a general submission in that it did not specify which agent, servant or employee was inquired about, and further because 'said issue is multifarious and duplicitous because it inquires about more than one act, namely whether said employees issued or distributed or published any circular or advertisement, or pamphlet or prospectus and also inquires as to other matter. The issue is further multifarious and du-

plicitous in that by virtue of the definition of "agent" as contained in the charge, it implied that the agents, servants or employees of B. V. Christie & Company were within the course and scope of their employment while it was contradicted under the evidence as to whether defendant Allen was in the course and scope of his employment. The defendants also objected to Special Issue No. 1 on the grounds that 'There is no pleading to support the submission of the question as to whether "other matter" were distributed by B. V. Christie & Company, its agents, servants or employee.'"

The jury answered, "We do."

Appellants do not discuss the lack of evidence objection, and neither do we.

■ It is our opinion that the issue is not subject to the objections made except that the alternative of "other matter" should be omitted. This issue is in the statutory language found in the 1955 and 1957 Securities Act.[3] These sections make it unlawful to advertise as to any security except in the manner therein prescribed. The "other matter" alternative was, no doubt, inserted to prevent a construction that the named means of advertising were exclusive. The "other matter" alternative should, if relied upon, be identified by pleading and evidence, and if so, similarly identified in any issue relating to it.

■ The prohibition of the statute is against unlawful advertising of securities. This is the ultimate issue to be determined. We believe that the various ways in which advertising may be made, as set out in the statute, may, if supported by pleading and evidence, be grouped and alternatively submitted as was done here by the Trial Court. We consider this manner of submission to be within the rule stated by Mr. Gus M. Hodges in his work on Special Is-

3. Sec. 22, Ch. 269, Acts 55th Leg.Reg. Sess.1957.

Sec. 23, Ch. 67, Acts 54th Leg.Reg.Sess. 1955.

sues, p. 115, that if "two questions are each evidentiary, so that together, or alternatively, they make up a single and controlling issue, a single issue defining them is not multifarious."

■ The objection that the agents of the company were not named in the issue is overruled. The agents were readily identified in the record. Many issues are submitted which refer to the parties without naming them. It would do no harm to name the individuals, but we see no harm done in failing to name them. Names themselves are unimportant, except for identification.

We do not agree that this issue assumes that the agents referred to were acting within the scope of their employment. It does not so state, nor does it state any fact from which such assumption could be inferred.

Point fourteen is that the Court erred in Issue Two over the objections of appellants. The issue, answer and objections are:

"Do you find from a preponderance of the evidence that B. V. Christie & Co., through its employees Calvin L. Allen and Estelle A. Millar made sales of Ambrosia Minerals stock to Morris W. Brewer between April 12, 1957 and February 21, 1958, inclusive?

"Answer 'We do' or 'We do not.'

"In connection with the foregoing issue, you are instructed that the term 'sales' means any act by which a sale is made and the term 'sale' or 'offer for sale' shall include a subscription, an option for sale, a solicitation of sale, a solicitation of an offer to buy and attempt to sell or an offer to sell directly or by an agent or salesman or by circular, letter or advertisement or otherwise, including the deposit in a United States post office or mail box or in any manner in the United States

mail within this State of a letter, circular or other advertising matter.

"Answer: 'We do.'

"The defendants objected to this submission of Special Issue No. 2 as follows: After having objected to the issue on the grounds of no evidence, insufficient evidence, and an affirmative finding would have been against the great weight and overwhelming preponderance of the evidence:

"(d) Said issue is duplicitous in that it asks a question concerning course and scope of employment of Allen and Millar, and implies that said defendants were within the course and scope of their employment, and is further duplicitous and multifarious in that an affirmative finding would find both that sales were made and were made within the course and scope of the employment of Allen and Millar.

"(e) The defendants object to the definition of 'sales' as given in connection with special issue No. 2 because it constitutes a general charge and is also a question of law.

"(f) The defendants further object to said special issue in that it is duplicitous and multifarious in light of the definition given of 'sales' which inquires as to subscriptions, options for sale, solicitations of sale, solicitations of offers to buy and attempts to sell, and further it inquires whether such acts were accompanied by circular, letter or advertisement or otherwise.

"(g) Special Issue No. 2 is also too general in that it inquires as to acts within a period of time commencing April 12, 1957, and terminating February 21, 1958 and does not specify the dates that are within that period of time that are in issue in connection with the various sales, because there is evidence in this record from which the jury could find that sales as defined in

special issue No. 2 were made at certain times within the period of time inquired about, but not at certain other times in said period of time."

These objections are overruled. The state of the evidence respecting this is not discussed by appellants, and neither do we.

Some of the objections made come within the scope of our discussion under point thirteen, and will not be repeated.

■■■ The definition of the word "sales" is taken literally from the Securities Act of 1955 and 1957. (Sec. 2(e) of the 1955 Act and Sec. 4E of the 1957 Act). It is not, therefore, erroneous.

The sales involved were admitted in the pleadings of appellants. They denied that they were made in violation of law. Under this issue appellee was obligated to establish that such admitted sales were made by Mrs. Millar and Mr. Allen in order to fix their liability under the Act. Without a full discussion of the evidence we cannot determine the validity of this issue. If the evidence would support different findings as to different sales as to either Mrs. Millar or Mr. Allen the issue should be split accordingly. As briefed, we cannot answer this problem satisfactorily. If on the other hand the evidence applies equally to all sales and to both Mrs. Millar and Mr. Allen, we would find no fault with the method of submission.

Point fifteen is that Issues One and Two as answered do not form a sufficient basis for appellants' liability under the Act. The contention here is that the answers to such issues are meaningless in view of the objections made to them and discussed by us under the two preceding points. Such discussion serves as our opinion here; accordingly, this point is to be considered overruled in conformity, however, with our expressions under such points.

Point sixteen is that the Trial Court erred in permitting testimony from strangers to this suit that Mr. Allen had solicited them to purchase Ambrosia stock through B. V. Christie and Company. We quote the testimony of Mr. Allen:

"Question: You didn't ask anybody from 1957 to 1959 to buy a single share of Ambrosia Minerals stock?

"Answer: That's right. I didn't ask anybody to buy a share of that stock.

"Question: You did not from 1957 to 1959 solicit any offers to buy the stock?

"Answer: Right.

"Question: You didn't sell, or offer to sell for delivery or solicit orders for any of the shares of stock in Ambrosia Minerals?

"Answer: That's right.

"Question: During that period of time?

"Answer: That's right."

Appellee introduced this testimony from Mr. Allen and then he sought to impeach it by the testimony of other witnesses. If the solicitation by Mr. Allen of these witnesses was not admissible as original evidence then under the rule as suggested in Texas Law of Evidence, McCormick and Ray, 2nd Ed., Sec. 684, this testimony should be excluded on the ground that no impeachment may be made as to collateral matters.

In Richmond v. Hog Creek Oil Co., Tex. Civ.App., 229 S.W. 563, writ dism., Tex. Com.App., 239 S.W. 904, the question at issue was whether a deed of a married woman had been properly acknowledged before a notary who testified that he had complied with the statutes in taking the acknowledgment. On cross-examination the notary denied that he had failed to comply with the statutes in taking acknowledgments of other married women whereupon evidence was offered that he had so failed.

This evidence was excluded and the Court in sustaining this ruling stated:

"* * * it seems evident that to permit an investigation of the manner in which McEntire took the acknowledgments of the ladies named would be to enter upon a determination of a multiplied number of issues without any direct relevancy in the present suit. As we understand the rule, this cannot be done. The issue in the present suit was whether McEntire complied with our statutes in taking the acknowledgment of Mrs. Richmond, and the fact that on one or more other occasions he failed to properly take the acknowledgments of other married women was immaterial, and, being immaterial, he could not be contradicted in respect thereto."

We would follow this case and McCormick and Ray and exclude this testimony unless it is admissible for some other reason. The only legitimate purpose for admitting this evidence, which occurs to us, is on the issue of the scope of authority of the agents Allen and Mrs. Millar. On this question see Vol. 2 Tex.Jur.2d Agency, Sec. 2. It should be particularly noted that "the admissibility of evidence of other similar transactions (to show the agent's authority) is dependent not merely on what the agent himself has done in such other transactions, but also on the principal's recognition of the agent's right to do such other acts."

The parties do not analyze the evidence applicable to the rules stated, and we will not do so; besides, the evidence may not be the same on re-trial.

■ Point seventeen is that the Trial Court erred in refusing to submit special requested issues one through twenty-three. The first seven issues inquired if Mrs. Millar had solicited the stock sales made to appellee. Submission of these issues was properly refused under the decision of Brown v. Cole, 155 Tex. 624, 291 S.W.2d

704, 59 A.L.R.2d 1011, which holds that "the seller may be any link in the chain of the selling process" or in the words of the Act he is one who performs "any act by which a sale is made." Mrs. Millar as executive officer of the Christie Company and agent for it confirmed the sales to appellee. This was certainly a link in the selling process. Accordingly, it was immaterial that Mrs. Millar did not solicit the sale. Mrs. Millar participated in a sale that was solicited.

The remaining issues requested by appellants relate to their asserted liability under the Federal Act, supra footnote 2. Appellee does not brief this point and appears to have abandoned his suit insofar as it is based upon the Federal Act. If we are incorrect in this, then we suggest that upon re-trial the issues requested by appellants as to this feature of the case be submitted to the jury if warranted by the evidence.

The judgment of the Trial Court is reversed and this cause is remanded.

Reversed and remanded.