Gary L. HARBISON, Appellant,

v.

SERVICE LLOYDS INSURANCE COMPANY, Appellee.

No. 13–90–262–CV.

Court of Appeals of Texas, Corpus Christi.

April 25, 1991.

Rehearing Overruled May 23, 1991.

Christopher H. Boswell, Harlingen, for appellant.

John William Black, Black, Hamilton, Roerig, Yanez, Brownsville (for purposes of appeal only), for appellee.

Before NYE, C.J., and BENAVIDES and HINOJOSA, JJ.

## SUBSTITUTED OPINION ON MOTION FOR REHEARING

NYE, Chief Justice.

This is a case involving the application of Texas Rule of Civil Procedure 166b(6)(b). Gary Harbison appeals the trial court's admission of the expert testimony of Dr. Jose Kuri for appellee Service Lloyds Insurance Company (Service Lloyds). Harbison's sole point of error asserts that the trial court erred in admitting Dr. Kuri's testimony, over his timely objection, because Service Lloyds did not timely designate or disclose Dr. Kuri as a possible witness. We reverse and remand for new trial.

On October 20, 1989, Service Lloyds filed suit to set aside the Industrial Accident Board's workers' compensation award to Harbison, which was based on Harbison's on-the-job fall. Service Lloyds claimed that Harbison's injury or disease manifested itself before the alleged incident made the basis of Harbison's claim. The parties agreed to accelerate discovery and set trial for March 19, 1990.

Harbison served Service Lloyds with written Interrogatories on January 9, 1990. Interrogatory Number 21 asked the following:

Please state the name and address of each person, **including experts,** having knowledge of relevant facts relating to the incident which is the basis of this lawsuit, the cause thereof, or the damages resulting therefrom. (emphasis added).

On January 10, 1990, Service Lloyds filed a motion to compel Harbison's answers to its Interrogatories. On February 8, 1990, the date upon which the answers to Harbison's Interrogatories should have been filed, Service Lloyds objected to each and every Interrogatory. On February 15, 1990, Harbison filed a motion to compel Service Lloyds to answer his Interrogatories.

After the hearing on the motions to compel, the trial court, the Honorable Robert Garza, presiding, issued a letter dated February 16, 1990, which overruled the objection and ordered Service Lloyds to answer specific Interrogatories, including Number 21, by March 2, 1990. Service Lloyds designated Dr. Kuri as an expert witness on February 28, 1990, nineteen days before trial. Dr. Kuri's expert report was not available for review until a few days before trial.

Harbison raised a timely and specific objection at trial stating that Dr. Kuri's testimony should not be allowed because he was designated after the thirty-day deadline required by Rule 166b(6)(b). Considering the objection, the trial court, the Honorable Darrell B. Hester, presiding, stated, "I'm stating here that Judge Garza made a reversible error in his ruling ..." however, "I will follow his ruling." Judge Hester overruled Harbison's objection.

Dr. Kuri testified, over Harbison's objection, that in his opinion, Harbison's injury was not caused by having slipped and fallen while in the course of his employment. After presentation of all the evidence, the trial court entered judgment on the jury's verdict that Harbison take nothing.

A party has an affirmative duty to identify expert witnesses in response to an appropriate inquiry. Tex.R.Civ.P. 166b(6)(b). This rule requires the responding party to supplement its list of experts "as soon as is practical, but in no event less than thirty days prior to the beginning of trial except on leave of court." The sanction for failing to comply with this rule is the automatic exclusion of the unidentified witness' testimony. *Alvarado v. Farah Mfg. Co.,* 34 Tex.Sup.Ct.J. 107, 108–09 (Nov. 21, 1990); *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 298 (Tex.1986); Tex.R.

Civ.P. 215(5). However, should the trial court find that the party offering the testimony had good cause for failing to supplement, it may, in its discretion, admit the testimony. *Sharp v. Broadway Nat'l Bank,* 784 S.W.2d 669, 671 (Tex.1990); *Boothe v. Hausler,* 766 S.W.2d 788, 789 (Tex.1989); Tex.R.Civ.P. 215(5).

▪ To determine whether a trial court abused its discretion in determining good cause, the appellate court must examine the record to see whether the trial court acted without reference to any applicable guiding rules and principles. *Morrow,* 714 S.W.2d at 298; *Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 442 (Tex.1984); *Ramos v. Champlin Petroleum Co.,* 750 S.W.2d 873, 877 (Tex.App.—Corpus Christi 1988, writ denied). A showing of good cause has two steps: (1) the offering party must show that it had good cause for its failure to timely respond to proper discovery requests, and (2) the offering party must show good cause for allowing the testimony. *K–Mart Corp. v. Grebe,* 787 S.W.2d 122, 126 (Tex.App.—Corpus Christi 1990, writ denied); *see Clark v. Trailways, Inc.,* 774 S.W.2d 644, 646–47 (Tex.1989).

Service Lloyds argues that Rule 166b(6)(b) gives the trial court discretionary "leave" to permit an expert witness within the thirty-day period before trial. Further, it argues that it established good cause for not responding to Harbison's Interrogatories because it could not select or designate an expert witness because Harbison tendered incomplete Interrogatories answers; therefore, it could not make available to an expert Harbison's medical records or the names and addresses of Harbison's previous health care providers and an accounting of the services rendered to Harbison. Service Lloyds also suggests that the accelerated trial date should be a factor when considering good cause to allow a party to provide answers to unanswered Interrogatories within the thirty-day period before trial.[1]

Applying the first step, we disagree that Service Lloyds was at a disadvantage to designate its expert until after Harbison supplemented his answers to Interrogatories. The record shows a letter to the parties in which Judge Garza determined most of Harbison's answers and records productions adequate while others required addresses or treatment and service provided or income tax returns for the last three years. The letter was the same which designated the pertinent questions in Harbison's Interrogatories which Service Lloyds previously refused to answer. Harbison argued that the addresses of medical personnel could be obtained from the medical records he originally provided.

Additionally, this was a workers' compensation case in which expert testimony would be necessary to prove Service Lloyds' allegations. From the outset, Service Lloyds knew it would need a medical expert at least to review Harbison's medical records and, probably, to perform a medical examination. The record does not show any effort by Service Lloyds to retain a physician to pursue those ends until two weeks before trial. There is no reason why a medical examination could not be performed at a date well within the Rules' discovery deadlines, although an expert's full assessment of Harbison's incapacitation might be delayed until after complete medical records were discovered.

Considering all the circumstances, the trial court abused its discretion by allowing Interrogatories answers and the designation of an expert witness so close to trial. It is elementary that Rule 166b is designed to get all the evidence "out on the table" before trial to promote settlement negotiations and to prevent trial by ambush. The court should have ordered immediate discovery compliance or not allowed Service Lloyds to answer at all because designating Dr. Kuri essentially created an ambush.

Applying step two, Service Lloyds knew from Harbison's prompt answers to Interrogatories that he intended to call certain physicians to testify regarding the cause and extent of his injuries. Contrary to Service Lloyds' assertions, the record indi-

---

1. We note that Service Lloyds objected to each of Harbison's Interrogatories and, thus, had not answered any Interrogatories before the thirty-day deadline.

cates that it did have Harbison's medical records, yet, Service Lloyds did not seek to depose any of Harbison's medical experts until just before or after the discovery deadline passed. There was no showing that Service Lloyds made any good faith effort to find an expert to analyze, either before or during the established discovery period, the medical records. In fact, Dr. Kuri testified that Service Lloyds' counsel contacted him no more than a month and no less than two days before he examined Harbison.

Perhaps more importantly, the trial court erred by allowing Dr. Kuri to testify regarding his interpretation of a previously unperformed diagnostic test, the Magnetic Resonance Imaging (MRI). Harbison's MRI results were not available until a few days before trial. This put Harbison at a distinct disadvantage for several reasons. Harbison did not have an MRI test done until Dr. Kuri requested one to testify on Service Lloyds' behalf. In the interest of fairness in the judicial process, Harbison's medical experts needed time to interpret the MRI results. No meaningful opportunity was afforded Harbison to prepare a rebuttal to Kuri's testimony, especially with regard to the significant MRI testimony. Dr. Kuri was the only expert to interpret the MRI results at trial. As such, Harbison did not have time to prepare any rebuttal for Dr. Kuri's testimony.

The facts do not permit a reasonable inference that Service Lloyds could not in good faith comply with Harbison's discovery request. Further, Service Lloyds did not show that it sought its expert witness diligently and in good faith so that a court would have good cause to allow the testimony of an undesignated witness. This late revelation of opinion evidence does not comport with the manner in which our Rules of Civil Procedure intended discovery to be properly conducted. Service

Lloyds did not show good cause for failing to answer or supplement Interrogatory Number 21 and for allowing Dr. Kuri's testimony. We hold that the trial court abused its discretion in allowing Dr. Kuri's testimony.

■ To obtain reversal of a judgment based upon the trial court's error in admitting or excluding evidence, the following must be shown: (1) that the trial court committed error, and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *McKinney v. National Union Fire Ins. Co.*, 772 S.W.2d 72, 75 (Tex.1989); *Gee v. Liberty Mutual Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989). Whether the error probably did cause the rendition of an improper judgment is to be determined in light of the record as a whole. *McKinney*, 772 S.W.2d at 75; *Pittman v. Baladez*, 158 Tex. 372, 312 S.W.2d 210, 216 (1958). When the evidence is cumulative and not controlling on a material issue dispositive of the case, it will not ordinarily be reversible error. *Gee*, 765 S.W.2d at 396; *McInnes v. Yamaha Motor Corp.*, 673 S.W.2d 185, 188 (Tex.1984), *cert. denied*, 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985); *Ramos*, 750 S.W.2d at 877. The question here is: Was the judgment controlled by the testimony that should have been excluded? [2]

Reviewing the record as a whole, as we must, we find that allowing Kuri to testify caused or probably caused the rendition of an improper judgment. The majority of the testimony in this case pertained to whether Harbison could have a successful back surgery in 1983 and live a pain-free life until he fell in 1988. Harbison received a laminectomy and spinal fusion in 1983. On August 18, 1988, he slipped and allegedly injured himself while in the course of his employment. Harbison testified that the 1983 surgery was extremely successful

**2.** The jury answered Jury Question number 1 as follows:

Did Mr. Harbison receive an injury on or about August 18, 1988 in the course of his employment with Weslaco Motors, Inc., that was a producing cause of any total and/or partial incapacity?

A person may not be totally and partially incapacitated at the same time.
Answer "Yes" or "No" to each.

    (a)  Total Incapacity   <u>NO</u>
    (b)  Partial Incapacity  <u>NO</u>

694

and that he lived without pain after his surgical treatment. He admitted that once, after overexertion, he suffered back pain but it eventually subsided. He understood from his visits with several physicians that the 1988 fall damaged the scar tissue from his previous surgery causing extreme pain. Harbison's lay and expert witnesses corroborated his testimony.

Appellee's expert witness, Dr. Kuri, was the only one who had the opportunity to examine the results of the Magnetic Resonance Imaging (MRI) test prior to trial. Kuri administered this test after Judge Garza permitted Service Lloyds to designate him as its expert. He testified that, based upon his analysis of the MRI, there was no new neurological impairment and therefore no new injury as a result of the 1988 fall. The entire thrust of Dr. Kuri's testimony was that Harbison did not receive an injury in 1988 which was a producing cause of any total or partial incapacity.

We are convinced that the trial court abused its discretion by allowing Dr. Kuri's designation as an expert so close to trial and by allowing Dr. Kuri to testify regarding his interpretation of a new diagnostic test which was not performed until days before trial. Dr. Kuri was the only witness to testify regarding the results of the MRI. His testimony rebutted all previous testimony that the 1988 fall injured Harbison. Because of the importance of Dr. Kuri's testimony to Service Lloyds' case, its admission without a showing of good cause caused or probably caused reversible error. These facts demand that both parties have the right to interpret the MRI results and testify about them in a new trial. Appellant's point of error is sustained.

The trial court's judgment is REVERSED. The case is REMANDED for new trial. Service Lloyds' motion for rehearing is DENIED.